UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM M. TYREE<br>P.O. BOX-100<br>SOUTH WALPOLE, MA. 02071<br>PLAINTIFF, Pro se<br><br>V.<br><br><br>UNITED STATES ARMY<br>CID AGENT PAUL MASON (Retired)<br>CID AGENT JOSEPH BURZENSKI (Retired)<br>DEFENDANTS<br>U.S. Department of Justice<br>John J. Moakley Courthouse<br>1 Courthouse Way, Suite 9200<br>Boston, Massachusetts 02210<br>(Main phone: 617-748-3100)<br>Counsel for Defendants | C.A. 04-11430-RCL<br><br>PLAINTIFF'S PROPOSED MAGISTRATES<br>FINDING OF FACT AND CONCLUSION OF<br>LAW ON THE PLAINTIFF'S AMENDED<br>COMPLAINT SUPPORTED BY EXHIBITS<br>1-7,* AND SUPPLEMENTAL PLEADINGS<br>BEFORE COHEN, MAGISTRATE JUDGE. |

This case originated in June 2003, when the Plaintiff, William M. Tyree, (hereafter "Tyree"), filed a letter to the United States Army, Judge Advocate General, (hereafter "JAG")[1]/, to investigate several alleged violations of the Uniform Code of Military Justice, (hereafter "UCMJ")[2]/, that Tyree alleges took place at the time he

---

*/ Exhibit-1 through Exhibit-7 in support of the Amended Complaint are identical to Exhibit-1 through Exhibit-7 in support of the Original Complaint.

1/ See letter dated June 9, 2003, marked as **Exhibit-1** attached to the Original Complaint. This letter was served Certified U.S. Mail on the JAG and proof of service is marked at **Exhibit-2**, reflecting that the Pentagon received this letter, and was received by "L. Johnson." Although the alleged false arrest occurred on February 13, 1979, it was not until June 2003, that Tyree was alerted to a judicial decision that specifically found the arrest occurred on February 14, 1979.

2/ The violations of the UCMJ were Article(s) 7,9,11,31,84, and 107. Each are identified in Exhibit-1. Tyree sought the review of these violations through a U.S. Army Court of Inquiry, and presented at least four specific issues in Exhibit-1, which would raise serious questions as to the subject matter jurisdiction of the civilian Massachusetts Police Authorities, (hereafter "MPA"), to take Tyree into custody on Fort Devens, Massachusetts, which is a federally protected reservation.

Page three
Proposed Finding


of the apprehension, arrest, confinement, and surrender of Tyree to the MPA was February 14, 1979.[3/] Of course this would create a serious problem with the criminal conviction of Tyree, but more to the point, would give rise to an immediate civil action for false arrest and imprisonment. Tyree received no word from the Exhibit-1 letter sent to the JAG, and on June 30, 2003, sent a letter to the USA Inspector General,[4/] (hereafter "IG"). The IG responded and told Tyree that the JAG was the appropriate USA authority under the circumstances and refused to intervene.[5/] After being denied review by the IG, Tyree then wrote a letter to the Secretary of the Army, seeking his intervention and assistance in this unusual set of circumstances.[6/] Tyree alleged in his Amended Complaint, (hereafter "AC"), at ¶¶22, that the Secretary of the Army failed to respond and or otherwise become involved. In 2004, Tyree filed a formal demand to the USA Tort Branch pursuant to the Federal Tort Claim Act, 28 USC, §2671, Et seq. The USA responded and denied the

---

[3/] The SJC specifically found as stated in the Amended Complaint at ¶¶7: "...The next afternoon, Wednesday, February 14, Tyree went to the CID building at Fort Devens...after Tyree had entered the building...Tyree was arrested..." Commonwealth v. Tyree, 387 Mass. 191, 203-204 (1982).

[4/] See letter dated June 30, 2003, marked as Exhibit-3 attached to the Original Complaint.

[5/] See letter dated July 25, 2003, marked as Exhibit-4 attached to the Original Complaint.

[6/] Tyree claimed that there was a false arrest and imprisonment resulting from the apprehension, arrest, confinement and surrender of Tyree to the MPA on 2/13/79, that took place without probable cause and in direct violation of Article 9(d) of the UCMJ which required probable cause exist prior to apprehension and arrest; Tyree claimed that USA Records were in error and contrary to the SJC decision which found the arrest occurred on 2/14/79

Page five
Proposed Finding

1979, Tyree was apprehended, arrested, confined, and surrendered to MPA on the sole charge of Conspiracy To Commit Murder, see AC at ¶¶9. Second, Tyree set out that the final resolution of this substantial charge was dismissal and nolle prosequi[9] entered. The charge was dismissed in favor of Tyree. Tyree is able to meet the standard and state a claim for false arrest and imprisonment through the dismissal of of this charge, D'Amario v. Collins, 43 Fed.Appx. 394 (1st Cir. 2002). Through the dismissal Tyree qualifies for damages pursuant to Heck v. Humphrey, 512 U.S. 477, 484 (1994). Tyree alleges and can bring a FTCA for intentional infliction of emotional distress[10], Gross v. U.S., 676 F2d 295 (8th Cir. 1982), see AC at ¶¶23(a)(c). Tyree alleges and can bring a FTCA for loss of consortium[11], Davis v. U.S., 834 F.Supp. 517 (D. Mass. 1993), see AC at ¶¶23(b)(d). Tyree alleges that fraud may have been at work in the events that led up to his false arrest, see AC at ¶¶32(b), 37-38. A person may be liable for false imprisonment by providing false information, Sarvis v. Boston Safe Deposit And Trust Company, 47 Mass.App.Ct. 86, 98 (1999). In the absence of a warrant on 2/13/79, or 2/14/79, when Tyree was apprehended, arrested, confined,

---

9/ A letter from Assistant District Attorney Peter Agnes, dated January 5, 1981, stated: "Due to insufficient evidence the charges of conspiracy to commit murder, and accesory before the fact of murder were dismissed against Mr. Tyree..." This is important as the charges were not nolle prosequi due to procedural or technical defects as discussed within Noel, supra., at page 355 dealing with malicious prosecution.
10/ Emotional distress from ongoing incarceration and denial of equal protection of the UCMJ.
11/ Loss of consortium from false ongoing incarceration and denial of equal protection and investigation of alleged violations of the UCMJ applied to Tyree.

Page seven
Proposed Finding

team in **Commonwealth v. Tyree**, supra., as demonstrated by their testimony and admitted presence related to in the SJC published opinion. As such, the Defendants have known about the SJC decision since it was published in 1982. This USDC is aware of that fact from the aforementioned DD-214 at Box-28, "Narrative Reason For Separation Civilian Conviction." The Defendants used the SJC published opinion from August 1982, to discharge Tyree from the USA in October 1982, The date discssued above of "821015" was the last date that Tyree was in the USA. The Honorable Discharge Certificate seen in Exhibit-1, at Exhibit-E, also reflects that "821015" is the official date that Tyree was discharged. So the Defendants have known of the date of February 14, 1982 for the past twenty-two years and never saw fit to address it, if it were wrong, or to bring it to the attention of Massachusetts judicial authorities. At this point in time, since the date of February 14, 1982, has not been challenged prior to now, as being inaccurate, it is waived by procedural bar, **Killela v. Hall**, 84 F.Sup..2d 204 (D. Mass. 2000)(Error not previously raised is waived). That is the standard criminal Defendants are held to, and the level playing field of the USDC requires the same standard be imposed against the Defendants in this case. Fuurther, the USDC also takes judicial notice of the fact that the Defendants could have challenged the date of February 14, 1982, within the past year after being placed on notice by Tyree in June 2003. That also did not occur. For reasons unknown to this USDC, the

Page nine
Proposed Finding

Defendants, there is still the matter of Res Judicata, **Sarvis**, supra., pps. 98-100. The date of February 14, 1979, was arrived at by the SJC after a full and complete post conviction review. Based on that full review this USDC takes judicial notice:

    *that the SJC rendered a final judgment on the merits on the issue of the date and time of the arrest of Tyree: that was February 14, 1979;

    *that estopple is asserted against the Defendants who were either parties to the SJC action, or who were in privity with the prosecution (Commonwealth), by apprehending, arresting, confining, and then surrendering Tyree to the MPA;[15]

    *that the date of February 14, 1979, previously adjudicated in the 1982 SJC finding is identical to the live issue in the case currently become this USDC. That date was essential to the SJC affirming the criminal conviction of Tyree. Or in the words of **Sarvis**, supra., was essential to the SJC rendering the earlier judgment.

As such, this USDC finds that even if the Defendants could find a path over the procedural barrier of **Killela**, supra., the same Defendants would then be barred by estopple. To be sure of that

---

[15] Tyree even alleged in his Original Complaint and AC, at ¶¶16 "That, the SJC opinion above at ¶¶7 has never been challenged by the Defendant, the MPA, nor any individual in the State of Massachusetts as being inaccurate on the actual date of the Plaintiffs arrest, and as such have waived their right to raise any challenge to that date of 2/14/79 at this time." This allegation is not without considerable merit when it rests squarely upon the SJC finding.

Page eleven
Proposed Finding

SJC finding that found Tyree to be arrested on February 14, 1979.[16/] Another problem facing the Defendants, and clearly raised by Tyree in his pleadings,[17/] is the actual innocence exception that Tyree alleged in his Original Complaint and in the AC at ¶¶39;[18/]

**fourth:** the SJC finding of 1982 supports the actual innocence that Tyree raised through the numerous pieces of documentary evidence at Exhibit-7 attached to the Original Complaint, and recited at ¶¶39 in the AC. Consider it this way if you will as this USDC did:

*Tyree is arrested (regardless of the date at this time) on Conspiracy To Commit Murder. That charge is then nolle prosequi and dismissed for insufficient evidence: not due to a procedural or technical problem. At that point in time, (then) the date and time of the arrest of Tyree becomes a live issue, and takes on major implications for the Defendants. Not the least of which is the question of whether or not the arrest of Tyree was taken pursuant to probable cause. If there was no probable cause, then the arrest of Tyree was false, and everything that flowed from that false arrest is unconstitutional and a continuing tort;

---

[16/] This USDC even reviewed <u>Commonwealth</u> v. <u>Aarhus</u>, 387 Mass. 735 (1982), the alleged co-conspirator of Tyree. In this case the events are similar, but there remains no mention or finding from the SJC on the date of the arrest of Tyree, and as such, the SJC finding in the case of Tyree recited above at note 3, remains the only SJC finding on the date of the arrest of Tyree.

[17/] "Plaintiff's Proposed Magistrates Finding Of Fact And Conclusion Of Law On the Plaintiff's Amended Complaint Supported By Exhibits 1-7 And Supplemental Pleadings Before Cohen, Magistrate Judge."

[18/] Actual innocence exceptions in criminal law have been found to exist and recognized. Tyree claims that such an exception increases the amount of USDC review this case should receive.

Page thirteen
Proposed Finding

and it gose without saying, that the level of probable cause to bring about an arrest is less, than the level of probable cause needed to bind Tyree over to the Superior Court. The action of Judge Killiam is equally important to say the least, and also raised questions[20] that the Defendants did not want answered, or which the Defendants did not know the answers to. Once a criminal Defendant is arrested for Murder, Conspiracy To Commit Murder, or Accesory Before The Fact Of Murder, the USDC is of the opinion that most, if not all the relevant questions related to the murder

---

[20] Judge Killiam found probable cause existed to bind Earl Michael Peters over to the Superior Court for being the person that actually welded the knife that killed Elaine Tyree. Mr. Peters was a soldier stationed at Ft. Devens, with Tyree. Judge Killiam found that Mr. Erik Aarhus was present or privy to the murder of Elaine Tyree. Tyree, Aarhus and Peters shared a common ground with CID Agents Mason and Burzenski. Tyree had been the focus of a year long CID investigation at Ft. Devens. Aarhus had admitted that he had swore false witness against Tyree in exchange for the sum of $20.00, his CID Retraction Statement dated "30 Nov 78" appearing at Exhibit-7, states at relevant parts: "Q.What happened when you talked to Peterson? A. I guess Peterson has something against Tyree, but I for sure didn't. Peterson offered me $20 to make a statement against Tyree to say he sold me the rope - but I, myself, had a personal grudge against Tyree at that time...Q. And after accepting the $20, did you make a statement against Tyree? A. Yes, I did." This statement of Aarhus was made sixty days prior to the murder of Elaine Tyree. Aarhus was the man that implicated Tyree in the murder of his wife on February 13, 1979, if you believe the Defendants, or on February 14, 1979, if you believe the SJC. As convoluted cases go, this one is in a league of its own. Not only did Aarhus recant an inculpatory statement made against Tyree, but did so voluntarily to a JAG. Further, once Judge Killiam found probable cause to bind Mr. Peters over to the Superior Court the local District Attorney, John J. Droney, sued the court and secured a stipulated agreement in which all charges were dropped and strickened from the court docket. Then the SJC went a step further, and the Order appearing at Exhibit-7 outlined at ¶¶4: "The individual defendants shall decline to exercise their jurisdiction to entertain applications for complaints brought by any party which seek to charge any individual or individuals with complicity in the murder of Elaine Tyree, unless so ordered by a justice or justices of the supreme judicial court..." In essence, the Tyree case remains the only case in the Commonwealth which must seek the approval of a justice, or justices of the SJC, in order to bring about the arrest of anyone else in this murder.

Page fifteen
Proposed Finding

by any judicial authority that would confirm probable cause at any level, much less the level needed on the date of Fabruary 14, 1979, when the SJC confirmed that Tyree was arrested on that date and not the date of February 13, 1979. The Defendants have a formidable barrier to overcome in this case which begins with the SJC decision above at note 3, and gets worse for the Defendants from that point on. On the other hand, time has been good to Tyree, for the same reasons that it has been bad for the Defendants. As stated above at note 7, and within **Noel**, supra., there is no defense available for statute of limitations, as this is a continuing tort. Tyree has met the one time related burden he had, that is to say, he filed the FTCA action now before the USDC within the six months that Colonel Olmscheid outlined in his letter of May 11, 2004. As such, the SJC finding above at note 3 controls this case, there are no statute of limitation questions, or other affirmative defenses, except the **Feres Doctrine**, that this USDC need address.

### FERES DOCTRINE

As initially set out above at note 14, the Defendants misplaced reliance on the **Feres Doctrine** is in error for the following reasons. Tyree alleged numerous reasons as set out in note 14, this USDC need only recite a handful to easily show why this Doctrine dose not bar this case from being tried before the USDC:

Page seventeen
Proposed Finding

the Defendants of the alleged violations of the UCMJ through Exhibit-1, and the Defendants did nothing. Military discipline and effectiveness are enhanced when the UCMJ are upheld. Since that failed to occur in this case, **Feres** cannot, and is not the controlling authority. In the case of Tyree, the controlling authority is the UCMJ, and the only legal authority the USDC recognizes in this highly questionable set of circumstances. If the USDC allowed **Feres** to control in this case, the Defendants could escape liability and judgment for their failure to carry out the statutory duties imposed by the UCMJ. The United States Supreme Court found in **Pennhurst State School & Hosp. v. Halderman**, 104 S.Ct. 900, 909 (1984):

> "...Since the state could not authorize the action the officer was stripped of his official or representative character and subject in his person to the consequences of his individual conduct..."

This USDC acknowledged that pursuant to **Rodriguez**, supra., that the United States could be held liable for false arrest of Tyree in the same manner and to the same extent as a private individual would be in like circumstances under applicable state law. In considering the pleadings filed by Tyree who asserted that **Pennhurst**, supra., and **Rodriguez**, supra., is the next step in the legal theory. Afterall, an official of the United States could never be subject in his official title for an action he committed. That official would be stripped of his title in so many words and litigated as an individual. **Rodriguez**, supra,.

Page nineteen
Proposed Finding

**fifth:** the sheer act of the USA physically surrendering Tyree to the MPA either on February 13th, or 14th, 1979, reflects that an act had taken place outside the military jurisdiction which the USA had no intention of subjecting Tyree to a Court-Martial for. That act that took place in the civilian community was a civilian jurisdictional homicide and although the USA had the authority within the UCMJ to retain and try Tyree by Court-Martial for his alleged involvement in the murder of his wife, a fellow soldier, the USA clearly relinquished their authority over Tyree. That authority was relinquished because the murder took place off of Fort Devens and was not incident to the service role that Tyree performed in the USA, or incident to the service role that his wife, Elaine Tyree, performed in the USA. If it had been, the USA would have Court-Martialed Tyree instead of turning him over to civilian MPA. What the Defendants relinquinshed in 1979, (i.e., military authority), they are not able to now claim the protection of pursuant to the **Feres Doctrine;**

**sixth:** federal sovereignty is at stake. The USA dropped the ball and failed to preserve federal sovereignty when they allowed the MPA to enter Fort Devens, a federal reservation, and without clear authority, seize Tyree: the issue of when Tyree was taken into custody was decided by a civilian court of jurisdiction, (the SJC), and that court has ruled contrary to the date of February 13, 1979, which the federal authority, (the USA), claims was the date of the arrest. Further, once the date of arrest is

Page twenty-one
Proposed Finding

could not have relied on the 1982 SJC finding to discharge Tyree. Since the USA will contest the 1982 SJC finding, the very document relied on previously to discharge Tyree, will no longer be available. Where the SJC finding has been set out above, and discussed at length, the Defendants are literally without a viable way of attacking the date of February 14, 1979, as the date of arrest of Tyree. That being said, it gets stranger. If the USA challenges the 1982 SJC finding they lack grounds to have discharged Tyree in 1982. The USA can't have it both ways. If they honor the 1982 SJC finding, then they could not have discharged Tyree, because he was arrested on February 14, 1982, (according to the SJC), and that is the day **after** the USA released Tyree from custody according to USA records. If the USA challenges the SJC finding, then they have the same problem. They can't use that SJC finding to justify their discharge of Tyree (because the civilian conviction of Tyree was not final until it was affirmed by the SJC). If they honor the SJC finding and admit they released Tyree on the date of February 13, 1979, then the USA admits that they released Tyree without probable cause. If the USA challenges the 1982 SJC finding they admit by that action that the SJC decision is flawed and could not have sustained or supported their decision to discharge Tyree in October 1982. That being said, it gets even stranger. Either way, Tyree is still in the USA. Either Tyree was released on February 13th, 1979, without probable cause, and "24 hours" prior to the time that the SJC found probable cause to exist for his arrest,

Page twenty-three
Proposed Finding

years during which Tyree was falsely arrested and imprisoned;

**third:** all references to the homicide and events leading up to it must be removed from all USA records relating to Tyree, as the criminal conviction, and subsequent discharge from the USA only occurred as aresult of the false arrest and imprisonment.

Based on the foregoing, the following will be entered into the USDC docket and sent to all parties:

**first: It is ORDERED** that the USA will notify this USDC not later than September 1, 2004, what the status of William M. Tyree, is. If Tyree is returned to the USA, then this case is dismissed and the **Feres Doctrine** controls. If Tyree is not returned to the USA by September 1, 2004, then **Feres Doctrine** [23/]

---

[23/] This is basically a case of subject matter jurisdiction. If the arrest and imprisonment was false, then it lacked subject matter jurisdiction. If on the other hand, the arrest and imprisonment were not false, or at least not enforced any longer, then the issue of subject matter jurisdiction could be worked out between the parties. This boils down to the USA. If the USA wants to try to very questionable set of circumstances and move against the SJC finding at note 3, which is graven in stone and unmoveable, then the USA can sit by and do nothing to correct this situation. On the other hand, if the USA dosen't really need anymore bad public relations that this type of public trial could bring, then it needs to become involved and return Tyree into the USA. This is also a matter of financial outlay. If the case is tried before a jury, Tyree has sued for the sum of $25 million dollars. A jury could look at his actual innocent claim and give him the money. On the other hand, if the USA takes Tyree back into the USA, all the USA is looking at is back pay, allowances and rank. That is a far cry and without arguement, a much smaller sum to pay for this matter. The **Feres Doctrine** cannot be applied to these circumstances while Tyree is still incarcerated and without some form of payment for that incarceration over the past twenty five years. Its about jurisdiction. While Tyree is imprisoned, the USA dose not have custody of Tyree, nor did the USA allow itself to follow up on the violations of the UCMJ that impacted Tyree. Until the USA has custody of Tyree, this lawsuit will remain active and squarely before this USDC. Once Tyree is returned to the USA he is entitled to back pay, allowances and rank, as he did nothing wrong in the USA to warrant denial of these things: on the contrary, the USA illegally surrendered Tyree, and the USA must correct this matter or the USDC will.

Page twenty-five
Proposed Finding

**24/**
violations of the UCMJ set out in the Exhibit-1 letter to the JAG?;

---

**24/** Among the documents at Exhibit-7 are letters from Floyd "Jack" Hebb, the father of Elaine Hebb-Tyree, and Middlesex Assistant District Attorney, Larry McCormack, which the supporting affidavit of Tyree outlined arrived unsolicited from Suffolk Superior Court, in envelopes from that court. This USDC does not pass judgment on the varacity of these documents but merely presents them for review. They are such documents that warrant investigation. Consider the relevant parts:

> "3/4/80. Mr. Droney...I have been trying to tell you for some time. Earl Peters knows the story, he mentioned to me he killed Elaine and cut her throat! Not too much question about how she died... Jack." (This hand written letter was identified by Tyree in his affidavit as being written by Jack Hebb. A letter to Tyree is also enclosed as an exhibit in Exhibit-7 to verify the hand writing, and to prove that Jack Hebb wrote to Tyree. The date of this letter was four days after Tyree was convicted of killing Elaine Tyree on 2/29/80, leap year).
>
> "Mr. Floyd Hebb...Your correspondence of March 4, 1980, to the Office of the Middlesex District Attorney has been referred to me for response. You have previously informed me of the content's of the correspondence in question. I would remind you of two thing's. The conviction of William M. Tyree, Jr., on February 29, 1980, is currently on appeal, and you are counting on the money from the insurance policies to pay for the addition's to your home. You need those addition's to provide a place for your granddaughter to live. If you go to Judge Young with your information your information you will not only jeopardize the conviction, but will prolong, or ultimately forfeit any chance you have of attaining custoyd of your grandfather, and the insurance money..." (From ADA McCormack, dated March 13, 1980)

These documents support the asserted actual innocence of Tyree. To that foundation this USDC would add one other document that also appears in Exhibit-7, a notarized statement from Francis Gardner, who had to be called to the Tyree apartment to let the APD into the apartment so they could find the body of Elaine Tyree on 1/30/79, at relevant parts he states:

> "...Shortly after noon on the 30th of January 1979, I was called to one of my rental units...I observed a person walking away from the area...I believe it was a fellow by the name of Peters..."

Earl Michael Peters was a visitor to the off post Tyree apartment. Francis Gardner would have had occasion to see Mr. Peters in the area of the Tyree apartment. It is logical to reach the conclusion that Mr. Gardner would have known who Mr. Peters was, and who he visited in the Tyree apartment building, since Mr. Gardner was the landlord. Mr. Peters testified in the 1979 Tyree probable cause hearing, and in the 1980 Tyree homicide trial, that he was asleep in the barracks at Fort Devens when Elaine Tyree was murdered minutes after noon. Mr. Peters may have a reason to lie to conceal his activities. This USDC is hard pressed to arrive at any reason that Mr. Gardner, the Tyree landlord would have a reason to lie and state that Mr. Peters was in the Tyree apartment complex area within the time immediately following the murder of Elaine Tyree.

Page twenty-seven
Proposed Finding

---

**25/** (continued):

      **(c).** the USDC takes judicial notice of a letter dated March 29, 1983, in Exhibit-1, at Exhibit-E, from **E.J. "Jake" Garn (R-Utah)**, who was the senior United States Senator from the State of Utah when the letter was signed, notarized, and sent to Tyree. Senator Garn was on the Appropriations Committee, Banking, Housing and Urban Affairs Committee, and the Intelligence Committee. Tyree enlisted in the USA from the State of Utah, and as such, Senator Garn was the Senator that Tyree, or his family would have contacted concerning a matter related to the USA. The Tyree family, (the parents of Tyree), and later Tyree himself, each contacted Senator Garn. In Exhibit-E, Senator Garn stated:

> "3. As I indicated previously, I made written inquiries to the Army on October 25, 1978, and on January 12, 1979, in response to your letter and your parents' letter to me respectively. The Army had not responded in writing to my January 12, 1979 inquiry which mentioned the threat to your life and that of your late wife. However, our office did, on Janaury 29, 1979, receive a call from someone named Doucette from the Army. The message left was that they (the Army) received our latest inquiry and it would be two weeks before we would get an answer. The next contact was from your mother by telephone regarding the tragic death of your wife. 4. I do not know for certain whether Col. Forest Rittgers knew of the threat of life prior to Janaury 30, 1979, **but there was sufficient time for him to be notified...**"

The name of Colonel Forest Rittgers is prominently noted in **Commonwealth v. Aarhus**, supra., at pps. 742-743, as the Commanding Officer at Fort Devens who allowed the warrantless search of the barracks room of Aarhus, where the murder weapon used to kill Elaine Tyree was discovered. Based on the information cited above, and in specific at note(s) 2,6,10, 11,13,14,19,20,21, and 23, the USDC would be considered narrow minded, or biased if it didn't point out that **first,** if Tyree was going to murder his wife, the USDC doubts that he would contact a well known United States Senator to report a threat to the life of his alleged victim, his own wife. That is illogical and would bring alot of attention on Tyree and his family. It has been the expereince of this USDC, that individuals looking to break the law don't usually want alot of attention while they break those laws. Contacting Senator Garn is out of character for a guilty man, but in character with someone trying to get help; **second,** if the USA failed to take the threats reported to the USA by Tyree, and Senator Garn, in a serious fashion, which resulted in the death of Elaine Tyree, that would provide a strong motive to allow the MPA to remove TYree without probable cause on either February 13th, or on February 14th, 1979. It would provide a motive for the USA failing to review, investigate, and correct the violations of the UCMJ Tyree reported to the USA in June 2003 through Exhibit-1. At Exhibit-7, is a copy of Page 35, Newsweek Magazine, September 19, 1994, and the headlines read: **"He Didn't Commit Suicide. Investigations: Anguished relatives insist the military bungled probes and covered up murders."** It appears that Tyree is not the only one that claims the USA has acted improperly.