UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MASSACHUSETTS

RECEIPT # _____
AMOUNT $ _150.00_____
SUMMONS ISS. _Yes_____
LOCAL RULE 4.1_____
WAIVER OF SERV. _____
MCF ISSUED _____

WILLIAM M. WYREE
P.O. BOX-100
SOUTH WALPOLE, MA. 02071
PLAINTIFF, Pro se

v.

UNITED STATES ARMY
CID AGENT PAUL MASON (Retired)
CID AGENT JOSEPH BURZENSKI (Retired)
DEFENDANTS
U.S. Department of Justice
John J. Moakley Courthouse
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(Main phone: 617-748-3100)
Counsel for Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION IN THE NATURE
OF FOUR LEGAL CLAIMS PURSUANT
TO THE FEDERAL TORT CLAIM ACT,
(FTCA), 28 USC, §2671; ONE
LEGAL CLAIM PUSUANT TO THE
PRIVACY ACT, 5 USC, §552a;
ONE LEGAL CLAIM PURSUANT TO
THE FEDERAL RECORDS ACT, (FRA),
44 USC, §2201; FALSE ARREST
AND IMPRISONMENT; INFLICTION
OF INTENTIONAL EMOTIONAL
DISTRESS; LOSS OF CONSORTIUM;
FAILURE TO ENFORCE AND EQUALLY
APPLY THE UNIFORM CODE OF
MILITARY JUSTICE; FAILURE TO
INVESTIGATE AND CORRECT U.S.
ARMY RECORDS.

04 - 11430 RCL

Referred To LP Cohen

JURISDICTION

1. That, the jurisdiction of this United States District Court,
(USDC), is invoked pursuant to the laws of the United States,
and Massachusetts; the Constitution of the United States, and
Massachusetts; cited caselaw herein, and with the pleadings to
be filed by the Plaintiff; the Uniform Code of Military Justice,
(UCMJ), inclusive of:

(a). Article 7(a):

"Apprehension is the taking of a person into custody..."

(b). Article 9(d):

"...No person may be ordered into arrest or confinement
except for probable cause..."

(c). Article 11(a):

"No Provost Marshal...may refuse to receive or keep
any prisoner committed to his charge by a Commissioned
Officer of the Armed Forces, when the committing
officer furnishes a statement, signed by him, of the
offense charged against the prisoner..."

2

(d). Article 84:

"Any person subject to this chapter who effects...a seperation from the Armed Forces of any person who is known to him to be ineligible for that...seperation because it is prohibited by law...shall be punished as a Court-Martial may direct..."

(e). Article 107:

"Any person subject to this chapter who, with intent to deceive, signs a false record, return, regulation, order, or other official document knowing it to be false, shall be punished as a Court-Martial may direct..."

(f). Article 134:

"Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the Armed Forces, all conduct of a nature to bring discredit upon the Armed Forces...of which persons subject to this chapter may be guilty, shall be taken cognizance of by a...Court-Martial...and shall be punished at the discretion of the Court."

(g). Article 135(a):

"Courts of inquiry to investigate any matter may be convened by any person authorized to convene a general Court-Martial or by any other person designated by the Secretary concerned for that purpose..."

(h). Article 138:

"Any member of the Armed Forces who believes himself wronged by his Commanding Officer, and who, upon due application to that Commanding Officer, is refused redress, may complain to any superior or commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer whom it is made. The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possible, send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon"

4

confined, and then surrendered to the Massachusetts Police
Authorities, (MPA), on February 13, 1979, either at 1820 Hours,
(or later on 2/13/79), **without probable cause**, for the
murder of the Plaintiffs wife;

(c). the same person who has been incarcerated since
February 13, 1979, and currently is incarcerated within the
Massachusetts Dept. of Correction, at MCI-Walpole, P.O. Box-
100, S. Walpole, MA. 02071.

3. That, the Defendant, USA, is and was at all time herein:

(a). the entity of the United States government that
employed the Plaintiff as a soldier at the time of the
illegal apprehension, arrest, confinement, and surrender by
USA CID. Agents (Paul Mason and Joseph Burzenski), and the
USA Fort Devens Provost Marshal, to MPA on **February 13, 1979**,
at 1820 hours, or there after on February 13, 1979;

(b). the entity of the United States government that
was notified in June 2003, upon discovery of the Massachusetts
Supreme Judicial Court, (SJC), decision that listed the actual
date and time of the Plaintiffs arrest as **February 14, 1979**;

(c). the entity of the United States government that
allowed itself to be litigated pursuant to 28 USC, §2671 Et seq.,
and whose address is The Pentagon, 101 Army Pentagon, Washington,
D.C., 20310-0101.

6

5. That, the Plaintiff alleges that the Defendant apprehended, arrested, confined, and surrendered the Plaintiff to MPA on February 13, 1979, at 1820 Hours, or there after on February 13, 1979 **without probable cause,** then upon discovery of the SJC decision listing the date of arrest as the date of February 14, 1979, the Plaintiff contacted the Defendant to investigate and correct the violations of the UCMJ and the Defendant did nothing.

6. That, the Defendant maintains that the CID and MPA took the Plaintiff into custody:

(a). on Fort Devens, Massachusetts, at the USA CID Field Office on **February 13, 1979, (2/13/79),** at 1820 Hours, lawfully, and support that position with the **Verified USA DA Form 4187 1 May 74,** which was verified within 72 hours of the arrest, apprehnsion, confinement of the Plaintiff, and did confirm the arrest occurred on 2/13/79, at 1820 hours;

(b). and the entire matter of the Plaintiff's arrest irregardless of the time or date is barred from judicial/USDC review by the <u>Feres</u> Doctrine at <u>Feres</u> v. <u>U.S.</u>, 71 S.Ct. 153 (1950).

7. That the SJC found in <u>**Commonwealth**</u> v. <u>**Tyree**</u>, 387 Mass. 191, 203-204 (1982), that:

> "...The next afternoon, Wednesday, February 14, Tyree
> went to the CID building at Fort Devens...after Tyree
> had entered the building...Tyree was arrested..."
> (at pps. 203-204)

8

**Hours** (or anytime on 2/13/79), and made a conscious decision to continue violating the rights guaranteed to the Plaintiff pursuant to the U.S. Constitution, the laws of the United States and of the Commmonwealth of Massachusetts, and the UCMJ;

(g). the Defendant upon being notified that a civil action for false arrest and imprisonment in April 2004, did invoke the protection of the **Feres Doctrine** as a shield to cover up and protect the Defendant(s) from the scrutiny of the USDC.

<u>**FACTS**</u>

9. That, irregardless of whether the Plaintiff was arrested on the date of February 13, 1979, or February 14, 1979, the Plaintiff was arrested on the criminal charge of Accesory Before The Fact Of Murder-Conspiracy To Commit Murder which were:

(a). subsequently nolle prosequi: the prosecution dropped or dismissed the charges for insufficient evidence;

(b). after being taken into custody on February 14, 1979, the Plaintiff was arraigned on the criminal charge of Murder, G.L.c. 265, §1, on February 21, 1979;

(c). pursuant to <u>**D'Amario**</u> v. <u>**Collins**</u>, 43 Fed.Appx. 394 (1st Cir. 2002), dismissal of substantive criminal offense such as both criminal charges above was a resolution to the proceeding in the favor of the Plaintiff required to state a claim for false arrest, and qualify the Plaintiff for damages pursuant to <u>**Heck**</u> v. <u>**Humphrey**</u>, 512 U.S. 477, 484 (1994);

10

265, §1, and the Plaintiff was secretly indicted for that crime.

13. That, the Plaintiff stood trial in February 1980, and was convicted solely on the charge of Murder, G.L.c. 265, §1.

14. That, having submitted a full post conviction appeal the SJC found that the actual date of the Plaintiffs arrest to be 2/14/79.

15. That, the date of **February 14, 1979** was never challenged by the Defendant, who used the same SJC opinion above at ¶¶7 as grounds to discharge the Plaintiff from the USA in October 1982.

16. That, the SJC opinion above at ¶¶7 has never been challenged by the Defendant, the MPA, nor any individual in the State of Massachusetts as being inaccurate on the actual date of the Plaintiffs arrest, and as such have waived their right to raise any challenge to that date of 2/14/79 at this time.

17. That, in June 2003, for the first time, counsel for the Plaintiff in another case questioned the Plaintiff about the date and time of his arrest leading the Plaintiff to discover the date of **February 14, 1979**, as being the actual date the SJC found the Plaintiff to be apprehended and arrested on.

12

U.S. Mail to the Secretary of the Army, **see attached EXHIBIT-5,** and the Secretary of the Army failed to take any action what so ever to uphold the UCMJ, or any other legal authority cited within Exhibit-1.

23. That, following the events involving Exhibit(s) 1-5, the Plaintiff did in April, and again in May 2004, file a timely FTCA Claim **Standard Form 95 (Rev. 7-85)**, to the USA, Attn: Chief, Tort Branch, 4411 Llewellyn Avenue, Ft. Meade, MD., 20755-5360, in which the following claims were brought to the attention of the USA for review and decision:

(a). 28 USC, §2671, FTCA: the Defendant did **without probable cause** apprehend, arrest, confine, and surrender the Plaintiff to the MPA on 2/13/79 at 1820 Hours (or at anytime on 2/13/79) resulting in the false arrest and confinement of the Plaintiff leading to intentional infliction of emotional distress which can be litigate pursuant to 28 USC, §2671 et seq., through the ruling of <u>Gross</u> v. <u>U.S.</u>, 676 F.2d 295 (8th Cir. 1982). The Plaintiff alleges that this claim #1 is a continuing tort which originated on 2/13/79, and is ongoing;

(b). 28 USC, §2671, FTCA: the Defendant did **without probable cause** apprehend, arrest, confine, and surrender the Plaintiff to the MPA on 2/13/79 at 1820 Hours (or at anytime on 2/13/79), resulting in the false arrest and confinement of the Plaintiff leading to loss of consortium which can litigated pursuant to 28 USC, §2671 et seq., through the ruling of

14

(or any time on 2/13/79), did fail to correct USA Records, inclusive of the USA 201 Personnel File of the Plaintiff, and maintain those USA Records in a accurate, relevent, timely, and complete manner, injuring the Plaintiff through the failure to maintain the USA Records appropriately. The Plaintiff alleges that this claim #5 is a Privacy Act violation originating in June 2003, and is ongoing denying the Plaintiff accurate USA Records that the Plaintiff would use to establish his arrest was false leading to the false imprisonment;

(f). 44 USC, §2201, FRA: the Defendant did beginning in June 2003, after being put on notice of the error on the date and time of the Plaintiffs apprehension, arrest, confinement, and surrender to the MPA on 2/13/79, at 1820 Hours (or any time on 2/13/79), did fail to correct the USA Records, inclusive of the USA 201 Personnel File of the Plaintiff, and maintain those USA Records in a accurate, relevent, timely, and complete manner, injuring the Plaintiff who would use the USA Records to establish his arrest was false leading to false imprisonment. The Plaintiff alleges that this claim #6 is an FRA violation originating in June 2003, and is ongoing.

24. That, pursuant to <u>Rodriquez</u> v. <u>U.S.</u>, 54 F.3d 41 (1st Cir. 1995):

> "...Under statutory waiver of sovereign immunity United States can be held liable for false arrest of Plaintiff in same manner and to same extent as private individual would be in like circumstances under applicable state law..."

16

30. That, the Defendant had no discretion in failing to enforce the UCMJ and by failing to do so has left the Defendant open for judicial review by this USDC.

31. That, based on the inaction of the Defendant after being served with Exhibit(s) 1-5, the Plaintiff can show that:

      (a). Defendant intended to restrain and apprehend the Plaintiff at 1820 Hours on 2/13/79, (or at any other time on 2/13/79), and restrain the Plaintiff from that point in time until now in violation of the legal authorities cited within ¶¶1 above;

      (b). the Defendant was unjustified in the apprehension, arrest/restraint, confinement, and surrender of the Plaintiff at 1820 Hours on 2/13/79, (or at any other time on 2/13/79);

      (c). the Defendant continued to allow the Plaintiff to remain incarcerated from June 2003, to the current time, knowing that there was a judicial ruling by the SJC which proved the actual date of the arrest of the Plaintiff to be on **2/14/79, not 2/13/79**;

      (d). the Defendant <u>directly</u> (through inaction on their own part), and <u>indirectly</u> (by allowing Exhibit(s) 1-5 to remain in the custody of the Defendant instead of sending these Exhibits to the Massachusetts State Attorney General and demanding an answer for the finding of the SJC decision above at ¶¶7), continued the false arrest and imprisonment of the Plaintiff from 2/13/79, to the current time;

18

(b). because the Defendant became aware through the Exhibit(s) 1-5, that the Plaintiff was conscious as to the **lack of probable cause** existing on 2/13/79, at 1820 Hours, (or at any time on 2/13/79), and refused to investigate the matter as the Defendant knew the USA had committed numerous violations of the UCMJ.


32. That, this is a continuing tort due to:

(a). the authority of the USA, and the USA CID to apprehend, arrest, confine, and surrender the Plaintiff to the MPA at 1820 Hours on 2/13/79 is in question as set out above at ¶¶ 5-8 raising the question pursuant to Article 9(d), of the UCMJ, if **probable cause** existed, and whether or not the civilian MPA currently have lawful jurisdiction over the Plaintiff twenty five years later in 2004;

(b). if the MPA gained jurisdiction over the Plaintiff by misleading the Defendant, or by fraud, then the Plaintiff was prematurely, and unlawfully discharged from the USA in violation of Article(s) 11, 84, 107, 134, 138 and as such, the Plaintiff would still technically be in the USA;

(c). the Defendant USA CID took an active part in the apprehension, arrest, and confinement of the Plaintiff on 2/13/79, at 1820 Hours, while at the sametime, the USA CID ignored the rights of the Plaintiff guaranteed by the UCMJ, and that refusal to uphold the right of the Plaintiff pursuant to the UCMJ continues as of the date of this Civil Action.

20

civilian SJC decision above at ¶¶7 outlining that **probable cause** for the arrest of the Plaintiff didn't actually exist until 2/14/79;

(c). clearly outlined that the military decision making process that apprehended, arrested, confined, and surrendered the Plaintiff to the MPA on 2/13/79, at 1820 Hours was misinformed, flawed, and more than likely relied upon the MPA which probably defrauded the Defendant;

(d). clearly outlined that military effectiveness was specifically impacted by the MPA who probably defrauded the Defendant USA and caused the Defendant to apprehend, arrest, confine, and surrender the Plaintiff to the MPA on 2/13/79, at 1820 Hours when **probable cause did not exist**;

(e). **clearly** outlined the state of confusion that surrounded the events of 2/13/79 and 2/14/79.

36. That, the majority of the MPA that sought the arrest of the Plaintiff on 2/13/79, at 1820 Hours have since 2/13/79, been arrested and charged with felonies themselves.

37. That, Chief William Adamson, and his son, William Adamson, Jr., of the Ayer Police Department, (APD), Ayer, Massachusetts, who headed and investigated the murder of the Plaintiff's wife were subsequently arrested, or forced to resign from the APD between 1982-1984, after it was discovered that:

22

40. That, this is not a 2254 (USDC) Habeas Corpus Petition.

41. That, the so called **Feres Doctrine** does not apply to the facts in this case the Plaintiff alleges for the following reasons:

(a). the relationship between the USA and the Plaintiff extended no further than the mandated Articles of the UCMJ which subjected the Plaintiff to the ultimate control of the USA;

(b). following the decision in **Feres,** non-military courts have observed the importance of military discipline which is unreviewable by non-military court which has been accepted due to the importance of the UCMJ which governs the USA-Defendant and which required the USA to adhere to the UMCJ;

(c). this case is not barred by **Feres,** as the complained of conduct of the Defendant reflected by the prima facia showing above at ¶¶5-8 clearly indicating that the Defendant failed intentionally, or unintentionally, to adhere to, and equally dispense the protection of the Articles of the UCMJ in the case of the Plaintiff which would now render the actions of the Defendant reviewable by this USDC;

(d). the questionable conduct of the Defendant was presented directly to the JAG, IG, and Secretary of the Army who failed to equally apply the protection of the UCMJ in June 2003, in the Plaintiff's case which gave rise to a separate claim;

(e). where the Defendant has seen fit to deny the

24

the Plaintiff:

(1). if the Plaintiff is still in the USA as alleged above at ¶¶5-8; ¶¶16; ¶¶32-33, then the **Feres Doctrine** would be in effect;

(2). if the Plaintiff is not in the USA at this time, the **Feres Doctrine** would not apply due to the facts alleged within this Civil Action;

(b). a conflict in state (SJC) and federal (USA) jurisdiction is seen at ¶¶5-8 above which requires this USDC to review and rule upon;

(c). the court of jurisdiction (the SJC) has rendered a decision at ¶¶7 above, which conflicts with USA actions, and USA documents or records;

(d). without **probable cause** on 2/13/79 at 1820 Hours, the **civilian** MPA entered onto Fort Devens, a federal reservation and contrary to the UCMJ illegally seized, falsely arrested and imprisoned the Plaintiff, a federally protected (soldier) citizen;

(e). **Feres Doctrine** was created to keep non-military courts out of military decision making that would impact military effectiveness and discipline but in this case the **lack of probable cause** on 2/13/79 at 1820 Hours requires the USDC to review this case to determine if the UCMJ, and other legal authorities at ¶¶1 above were violated;

(f). after **being alerted** to the problem in June 2003, by Exhibit(s) 1-5, the Defendant undetook no corrective action

26

43. That, the Plaintiff realleges ¶¶1-42 as the cause of this action.

44. That, the actions, inactions, and omissions of the Defendant are the direct proximate cause of the injuries sustained by the Plaintiff which include:

      (a). illegal false arrest and confinement since 2/13/79;

      (b). intentional infliction of emotional distress;

      (c). loss of consortium: with immediate family members, still living, and with parents who have died while the Plaintiff was incarcerated; with daughter who grew up without a father; with second wife Rhonda Lyles who married the Plaintiff in 1989; with friends that had planned a business together; through lost financial opportunities;

      (d). a failure to maintain accurate, timely, relevant, and complete records that would have helped the Plaintiff prove his case before this USDC.

45. That, the Plaintiff has stated an actual controversy that exists between the parties that the USA will not investigate, and which requires the determination of this USDC as to the rights of the parties involved, as no other adequate, or available remedy exists.

## LEGAL CLAIMS

28

intentional emotional distress and loss of consortium;

(7). 14th Amendment: illegal false arrest
and imprisonment; denial of due process; denial of equal
protection of cited legal authorities within.

**LEGAL CLAIM #2:**

49. That, the Plaintiff realleges ¶¶46.

50. That, the Plaintiff realleges ¶¶23(b), loss of consortium
in this alleged continuing tort.

51. That, the Plaintiff realleges ¶¶48(a)(b)(c)(1)(2)(3)(4)(5)
and (7).

**LEGAL CLAIM #3:**

52. That, the Plaintiff realleges ¶¶46.

53. That, the Plaintiff realleges ¶¶23(c), intentional infliction
of emotional distress in FTCA since June 2003.

54. That, the Plaintiff realleges ¶¶48(a)(b)(c)(1)(2)(3)(4)(6)
and (7).

**LEGAL CLAIM #4:**

55. That, the Plaintiff realleges ¶¶46.

30

## RELIEF SOUGHT

64. Declare the rights of the parties.

65. Order that the **USA DA Form** 4187 1 **May** 74 bearing the time and date of 2/13/79 at 1820 Hours when the Plaintiff was surrendered to the MPA be provided to the Plaintiff immediately.

66. Damages in the amount of $25,000,000.oo for injuries suffered by the Plaintiff:

(a). either for the continuing tort from 1979 to June 2003; 1/

(b). or for injuries sustained by the Plaintiff since June 2003.

67. Trial by jury on all issue's triable and whatever greater or further relief the USDC deems in the interest of justice.

## VERIFICATION

I, William M. Tyree, on oath state that all documents attached to this Civil Action at Exhibit-1 through Exhibit-7, are true genuine copies of the documents that they purport to be and I sign this to the best of my knowledge, under the pains and the penalties of perjury on the below date:

_William M. Tyree_
William M. Tyree
Pro se
P.O. Box-100
S. Walpole, MA. 02071

Date: 7-3-04

---

1/ "...Under Massachusetts law, it is a continuing tort for an officer to unlawfully arrest and detain a person..." Noel v. Town Of Plymouth, Mass. 895 F.Supp. 346 (D. Mass. 1995).