June 9, 2003

Department of the Army
**Attn: The Judge Advocate General of the United States Army**
The Pentagon
Washington, D.C. 20310

**RE: Fraud Perpetrated Against The U.S. Army By Civilian Police Officers In A Capital Murder Of A U.S. Army Soldier.**

Dear sir,

Greetings and well done in Iraq! Airborne. My name is William M. Tyree. My last duty assignment was the 441st Military Intelligence Detachment, 10th Special Forces Group, Airborne, (SFG(A), Fort Devens, Massachusetts, 1979.

According to available documents the Army released me into the custody of the Ayer Police Department, Ayer, Massachusetts, on February 13, 1979, (2/13/79), for the murder of my wife, PFC Elaine A. Tyree. n.1/

According to the Massachusetts Supreme Judicial Court, (SJC), the highest state court, the SJC found that I was actually arrested on February 14, 1979. n.2/

**Needless** to say if the Army released me prior to the existence of verified probable cause we have a violation of the UCMJ at several Articles. n.3/

After consulting with my attorney the flaw in the published SJC opinion was brought to my attention. In Massachusetts, such a flaw must be noticed by the court of jurisdiction at any time because it impacts on the jurisdiction of that court to hear the matter. n.4/

**Problem #4:**

Upon consideration of the date of the arrest in the SJC opinion of 2/14/79, and the date of my arrest according to the Army as 2/13/79, which such a conflicting set of dates in a capital case that impacted the civilian-military jurisdictions, **how could the U.S. Army rely upon the SJC opinion that confirmed my conviction and use that SJC opinion as grounds to bring about and support my discharge from the U.S. Army?** (I would also point out two other facts relevant to this problem: (a). Judge James Killiam III, found no probable cause to bind me over for trial on the exact crime I have been incarcerated for since 1979. His written decision of two pages dated May 15, 1979, came about after a 12½ day hearing and testimony from 45-50 witnesses; (b). after my conviction even the U.S. Army Discharge Board (acutely aware that I was being railroaded) handed down a **"General Discharge Under Honorable Conditions."** The conviction was highly debated among Fort Devens personnel for years after it occurred).

There are four problems that arise from the difference in the SJC date of 2/14/79 and 2/13/79. Consider another problem that would make most hard core judges cringe. With such a difference in the dates, (a full 24 hours), I can honestly state that I was never given my rights under **Miranda v. Arizona** or **Article 31**, and since I was arrested on Fort Devens the U.S. Army had no choice but to administer Article 31 rights before any questioning occurred.

I have filed this request for investigation and review with the SJA, and have under separate cover requested a Congressional Investigation through my state Senator, John F. Kerry (D-Mass). I have done this for several reasons. The three major reasons are:

1. prior to the murder of my wife, we contacted the U.S. Senator from Utah, E.J. "Jake" Garn (my home of record), and requested that he direct the Army to investigate threats to our lifes that we had received. Senator Garn tendered a notarized letter in 1983 (enclosed) which outlined the Army had the time to investigate the threats, (six weeks before the murder) and did nothing! Could this negligence be the motive for the Army's error on the date of my arrest?n.6/;

2. Senator Kerry has received numerous documents and testimony that put me in the middle of activities in the U.S. Army that the Army denies took place: the Senator is aware that this case reaks of a cover up. Even Judge Killiam used the word "frame.";

(a). the actual date of my arrest;

(b). the course of action required to correct the SJC opinion if it is found to be in error: should an Order from a U.S. District Court be sought to correct the date (or to acknowledge it by the Army), or should a hearing in the Massachusetts Superior Court (of jurisdiction in Middlesex County, Massachusetts), be sought and held attended by all relevant parties;

(c). whether or not I am in the U.S. Army and have been for the past 24½ years due to the error of the date of my arrest;

(d). whether or not the date and time of my true arrest found by the Court of Inquiry will have any impact on my conviction and ongoing incarceration (it could be determined that I was truly arrested on 2/14/79, or perhaps earlier than previously known on 2/13/79 when no probable cause existed), if that is found, then the Court of Inquiry must make a determination as to whether or not any of the findings made by the Court of Inquiry impact and or nullify my conviction. In short, there is no way to determine at this point where this will go and the Court of Inquiry should have the authority to <u>identify</u> whatever problems may be found to exist which stem directly from the date and time of the arrest, and make recommendations on how to correct them);

(e). reinstatement in the U.S. Army with time served incarcerated credited towards retirement and benefits. <u>I DO NOT REQUEST DAMAGES UNDER 42 USCA, §1983</u>;

(f). pursuant to Article 11 of the UCMJ I make a formal request for all MP, MPI, CID documents related to my arrest. I also make a formal request for the **DD Form 4187 1 May 74** (edition) from the date of my arrest which should have been signed off on by Cpt. Erik K. Polcrack, INF, Commanding, Service Company, 10th SFG(A). This document should bear the time and date of my arrest which is the central document conflicting with the SJC opinion.

I would also point out that normally where federal law preempts state law through the Federal Supremacy Clause, in this case the Army waived jurisdiction and surrendered me to the civilian police. Through that act alone, the Army would need to correct the issue of the difference in the dates of arrest, as the Army may have been suckered into waiving jurisdiction and that would account for the difference in the dates of arrest; <u>further,</u> the Army had primary jurisdiction over me. If the case the civilian police had was flawed to the point of a difference in the date of the arrest by a full 24 hour period, I would bet the Officer who released me from Army custody would have liked to have known that information before he let me go; <u>further</u> until the Army reasserts its jurisdiction over my person, the state SJC

n.6/ see Sworn Statement of Senator Garn. Attached **Exhibit-E.**

n.7/ A Court Of Inquiry could:

(A). marshall the facts to determine what course of action should be taken;
(B). investigate to determine what the true date of arrest is;
(C). make recommendations as to how to correct the date of arrest is that is required;
(D). provide a solid record to give the civilian court at in a civilian evidentiary hearing;
(E). determine if it is in the best interest of the service and the good of the public to take the prosecution against me any further.

CAUTION: NOT TO BE USED FOR IDENTIFICATION PURPOSES

THIS IS AN IMPORTANT RECORD. SAFEGUARD IT. ANY ALTERATIONS IN SHADED AREAS RENDER FORM VOID

DD FORM 214, 1 JUL 79 — PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE.

A4

# CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

1. NAME *(Last, first, middle)*: TYREE, WILLIAM MURRAY JR
2. DEPARTMENT, COMPONENT AND BRANCH: ARMY/RA
3. SOCIAL SECURITY NO.: 528 | 96 | 6321

4a. GRADE, RATE OR RANK: PV1
4b. PAY GRADE: E1
5. DATE OF BIRTH: 580221
6. PLACE OF ENTRY INTO ACTIVE DUTY: SALT LAKE CITY UT
7. LAST DUTY ASSIGNMENT AND MAJOR COMMAND: CO A USAPCF FT DIX NJ TC
8. STATION WHERE SEPARATED: FORT DIX NJ 08640 H
9. COMMAND TO WHICH TRANSFERRED: NA
10. SGLI COVERAGE: AMOUNT $ 35,000 [ ] NONE

11. PRIMARY SPECIALTY NUMBER, TITLE AND YEARS AND MONTHS IN SPECIALTY *(Additional specialty numbers and titles involving periods of one or more years)*

P76P1P MAT CTL & ACTG SP 04 YRS 11 MOS

| 12. RECORD OF SERVICE | YEAR (s) | MON (s) | DAY (s) |
|---|---|---|---|
| a. Date Entered AD This Period | 77 | 08 | 22 |
| b. Separation Date This Period | 82 | 10 | 15 |
| c. Net Active Service This Period | 01 | 05 | 21 |
| d. Total Prior Active Service | 01 | 06 | 01 |
| e. Total Prior Inactive Service | 00 | 02 | 02 |
| f. Foreign Service | 00 | 00 | 00 |
| g. Sea Service | 00 | 00 | 00 |
| h. Effective Date of Pay Grade | 79 | 01 | 05 |
| i. Reserve Oblig. Term. Date | 00 | 00 | 00 |

13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED *(All periods of service)*

ARMY SERVICE RIBBON

14. MILITARY EDUCATION *(Course Title, number weeks, and month and year completed)*

STK CON * 8 WEEKS (7710)

15. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM: [ ] YES [X] NO
16. HIGH SCHOOL GRADUATE OR EQUIVALENT: [X] YES [ ] NO
17. DAYS ACCRUED LEAVE PAID: NONE

18. REMARKS

CONTINUATION OF ITEM 14a SUPMN /NOTHING FOLLOWS/

EXHIBIT A

19. MAILING ADDRESS AFTER SEPARATION

12913 S. 1800 W.
RIVERTON, UT 84065

20. MEMBER REQUESTS COPY 6 BE SENT TO UT DIR. OF VET AFFAIRS: [X] YES [ ] NO

21. SIGNATURE OF MEMBER BEING SEPARATED: INDIVIDUAL NOT AVAILABLE FOR SIGNATURE

22. TYPED NAME, GRADE, TITLE AND SIGNATURE OF OFFICIAL AUTHORIZED TO SIGN: M. L. TETTERTON CW2 USA CHIEF SEP DIV

## SPECIAL ADDITIONAL INFORMATION *(For use by authorized agencies only)*

23. TYPE OF SEPARATION: DISCHARGE
24. CHARACTER OF SERVICE *(Includes upgrades)*: UNDER HONORABLE CONDITIONS 2
25. SEPARATION AUTHORITY: CHAP 14 SEC II AR 635-200
26. SEPARATION CODE: KB
27. REENLISTMENT CODE: RE-4
28. NARRATIVE REASON FOR SEPARATION: CIVILIAN CONVICTION
29. DATES OF TIME LOST DURING THIS PERIOD: 790213 TO: 821015
30. MEMBER REQUESTS COPY 4: ______ INITIALS

S/N 0102-LF-000-2140

SERVICE - 2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM M. TYREE<br>P.O. BOX-100<br>SOUTH WALPOLE, MA. 02071<br>PLAINTIFF, Pro se<br><br>V.<br><br>UNITED STATES ARMY<br>CID AGENT PAUL MASON (Retired)<br>CID AGENT JOSEPH BURZENSKI (Retired)<br>DEFENDANTS<br>U.S. Department of Justice<br>John J. Moakley Courthouse<br>1 Courthouse Way, Suite 9200<br>Boston, Massachusetts 02210<br>(Main phone: 617-748-3100)<br>Counsel for Defendants | C.A. 04-11430-RCL<br><br>AFFIDAVIT OF WILLIAM M. TYREE ATTESTING TO PRISON DOCUMENTS THAT CONTAIN THE DATE OF FEBRUARY 13, 2004, AS THE DATE OF THE ARREST OF WILLIAM M. TYREE, AND THE DATE HIS SENTENCE TOOK EFFECT. |

I, William M. Tyree, on oath state:

1. That, I am the named plaintiff in the above entitled case.

2. That, after I filed the Original Complaint in the above entitled case, I was able to get copies of the attached documents:

(a). "Deductions From Sentence Summary Sheet" (which lists "Effective Date of Sentence" as 2-13-79);

(b). "Inmate Sentence Listing" (which lists "Effective: 19790213" or February 13, 1979).

3. That, the date of February 13, 1979, is in conflict and under challenge before this United States District Court, as the Supreme Judicial Court clearly found that I was arrested on the date of February 14, 1979. The date of February 14, 1979, as the true date of my arrest has never been challenged by the Commonwealth despite the fact that we have been to court in some fashion or

INITIALS: [illegible]

NOTICE: 11-14-02

MCI-CEDAR JUNCTION

# "Deductions From Sentence" Summary Sheet

S.D.P. Clearance
Needs Processing

Cleared NA

Date: October 24, 2002

Prepared by: Lisa Black

Inmate: Tyree, William

Number: W-37519

Effective Date of Sentence: 2-13-79

Period Beginning: 2-1-02 (Date)

Period Ending: 9-30-02 (Date)

**Governing Release Dates**

| Parole | Minimum | Maximum | G.C.D. |
|---|---|---|---|
| — | — | Life | — |

Total Deductions Allowed in Computing Adjusted Release Dates from Governing Release Dates:

Good Conduct Ø Camp Ø

129 D 407 Blood Ø

Total Good Conduct Forfeitures: ______ (not to be included in computation)

Since Last Requested - Dated 1-29-02

Camp: Ø

Blood: Ø

**Adjusted Release Date**
Includes Camp time, blood time, 129 D

| Parole | Minimum | Maximum | G.C.D. |
|---|---|---|---|
| — | — | Life | — |

**129 D (Only)**

| Program/Activity | Institution of Participation | Dates of Participation | # Recommended Deductions |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | See Other Side! → | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |

**Revised Release Dates**

| Parole | Minimum | Maximum | G.C.D. |
|---|---|---|---|
| — | — | Life | — |

Total Numbers of Days Recommended: 20

Sharon Blanchard 11-4-02
Superintendent or Designee Date

Total Number of Days Granted: 20

Michael T. Maloney 11-7-02
Commissioner Date

[illegible] CLASSIFICATION DIVISION

The next afternoon, Wednesday, February 14, Tyree set up a meeting with Aarhus off the base and arranged to have police officers present. When Tyree and Aarhus failed to appear, the officers went to the CID building at Fort Devens. Within a few minutes Tyree appeared and announced, "I've just seen the knife, the knife is in the barracks under Aarhus' pillow and you'd better get down there before it's moved." After receiving permission from military authorities, police officers and Army Criminal Investigation Division agents went to the service company barracks and searched Aarhus' room. Under his pillow, they found a knife with a four-and-one-half inch blade in a sheath, wrapped in a plastic bag. The knife had "Captain Beyond" inscribed on the blade and was covered with bloodstains later determined to be of Elaine Tyree's blood type. Officers arrested Aarhus immediately and brought him back to the CID building within thirty-five or forty



minutes after Tyree had entered that building. Shortly thereafter, Tyree was arrested.

CAUTION: NOT TO BE USED FOR IDENTIFICATION PURPOSES

ANY ALTERATIONS IN SHADED AREAS RENDER FORM VOID

| 1. NAME (Last, first, middle) | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NO. (Also, Service Number if applicable) |
|---|---|---|
| Tyree, William Murray Jr. | ARMY/RA | 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 |
| 4. MAILING ADDRESS (Include ZIP Code) | | |
| 12913 S. 1800 W. Riverton, UT 84065 | | |

5. ORIGINAL DD FORM 214 IS CORRECTED AS INDICATED BELOW

| ITEM NO. | CORRECTED TO READ |
|---|---|
| | SEPARATION DATE ON DD FORM 214 BEING CORRECTED - 82 10 15 |
| 13. | Parachute Badge |

-----------------------------------LAST ENTRY-----------------------------------

| 6. DATE | 7. TYPED NAME, GRADE, TITLE AND SIGNATURE OF OFFICIAL AUTHORIZED TO SIGN |
|---|---|
| 5 May 1999 | Kathryn G. Frost, Brigadier General, USA, Adjutant General |

DD FORM 1 JUL 79 215

PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE.

**CORRECTION TO DD FORM 214, CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY**

MEMBER - 1

# DISPOSITION FORM

For use of this form, see AR 340-15, the proponent agency is TAGCEN.

| REFERENCE OR OFFICE SYMBOL | SUBJECT |
|---|---|
| SFSV | ADVERSE PERSONNEL INFORMATION |

TO Commander, 10th SFGA
ATTN: SFSB
Fort Devens, MA 01433

FROM Commander
SVC CO, 10th SFGA
Fort Devens, MA 01433

DATE 15 Feb 79 CMT 1

SUBJECTS: AARHUS, Erik Yngvar; PV1; [redacted]
TYREE, William Murry Jr.; PV1; 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
ROSARIO, Ramos Rafael; SP4; [redacted]

REFERENCES: CID Report No. 79-CID062-08017-5H1B
CID Report No. 79-CID062-08018-5L3B/5L3C

SYNOPSIS: Between 1030 - 1230, 30 Jan 79, in Ayer, MA, at the off post residence of William and Elaine Tyree, E. Tyree was murdered by someone who stabbed her in the chest several times and cut her throat. An investigation was undertaken by the Ayer Police Department and the detectives from the Massachusetts State Police with the assistance from the CID. At 1820, 13 Feb 79, W. Tyree informed CID and the civil authorities that Aarhus admitted to him that he had murdered E. Tyree, and he (W. Tyree) had seen the murder weapon in Aarhus' room in the barracks at Ft. Devens. A search warrant was procured and executed by CID at which time a blood-stained butcher knife suspected to be the murder weapon, and blood-stained clothing was recovered from Aarhus' room, Room 141, Bldg P-641, Ft Devens, MA. During questioning of Aarhus, he confessed to having murdered E. Tyree, after W. Tyree offered to pay him $5,000.00 to kill her. Aarhus and W. Tyree were arrested by civil authorities and confined pending judicial process. Incident to the above search of Aarhus' belongings, a box containing an estimated 300 to 400 blue tablets, suspected to be DIAZPAM, valued at approximately $300.00 was found. Further questioning of Aarhus indicated that he had procured the tablets from Rosario. Rosario was apprehended by the CID at 0700, 15 Feb 79, charged with wrongful possession and sale of a controlled substance, and released to the unit. Further information will be provided as it becomes available.

[signature]
STEPHAN V. OTTESEN
CPT, IN
XO



DA FORM 2496 (FEB 62) REPLACES DD FORM 96, WHICH IS OBSOLETE.

s open on a plea of
1. (1968) 235 N.E.2d

nity of defendant is
vidence is offered at
anity. Chin Kee v.
87, 354 Mass. 156.

e photograph of de-
fied she had identi-
ings of photographs
hree men she saw
d business establish-
ands lack of counsel
ings was violative of
de it impossible to
r photographic con-
ibly suggestive in vi-
endment. Com. v.
678, 361 Mass. 889.

defendant upon his
d out to him and at
e was again advised
signed a waiver and
nor for use of tele-
alid ground for com-
f his confession was
on which preceded it
. Com. v. Betten-
!20, 361 Mass. 515.

nt, without presence
in light of all the
police bias was sug-
cedure under which,
ntified defendant in
emphasized at trial
s his before he was
observe the men in-
dant. Com. v. Jack-
79, 359 Mass. 759.

ould be inadmissible
after United States
equiring that an ac-
ghts to remain silent
ted if he is indigent
been specifically ad-
unsel paid for by the
statement was taken
ment took place pri-
decision. Com. v.
.2d 924, 358 Mass.

t in custody, nor be-
d and second defen-
made to police offi-
ers, admissions were
efendant was without
(1968) 239 N.E.2d 5.



354 Mass. 598, certiorari denied 89 S.Ct. 697, 303 U.S. 1056, 21 L.Ed.2d 698.

Guilty plea which defendant has entered to charge at probable cause hearing where he was without counsel is inadmissible in his trial on charge. Arsenault v. Com. (1968) 233 N.E.2d 730, 353 Mass. 575.

Admission of defendant's plainly prejudicial statement made to police officers more than six months after he had been indicted and in absence of counsel known to one officer was error. Com. v. McCarthy (1964) 200 N.E.2d 264, 348 Mass. 7.

A written confession obtained without threats, promises or mistreatment before defendant had been brought into any court was admissible in prosecution for murder, though defendant had not been advised, prior to procurement of confession, of his right to assistance of counsel. Com. v. McNeil (1952) 104 N.E.2d 153, 328 Mass. 436.

**24. Exceptions**

Since G.S.1860, c. 112, § 9, there is a right of exception to rulings on questions of law in capital cases. Com. v. Dower (1862) 86 Mass. 297, 4 Allen 297.

**25. Review**

Where defendants' counsel requested court to apprise jury of fact that codefendant had pleaded guilty in their absence, court's statement that with consent of all parties in interest he desired to announce that such codefendant had pleaded guilty was not erroneous, since jury must have understood that judge's announcement was with other defendants' consent and not that plea of guilty was with their consent. Rettich v. U.S. (C.C.A.1936) 84 F.2d 118.

An order denying accused permission to withdraw a plea of not guilty and plead anew will not be reviewed, in the absence of abuse of the discretion of the trial court. Com. v. Tucker (1905) 76 N.E. 127, 189 Mass. 457.

## PLEADINGS AND MOTIONS BEFORE TRIAL

*Caption added by St.1965, c. 617, § 1.*

## § 47A. Defenses or objections

In a criminal case, any defense or objection based upon defects in the institution of the prosecution or in the complaint or indictment, other than a failure to show jurisdiction in the court or to charge an offense, shall only be raised prior to trial and only by a motion in conformity with the requirements of the Massachusetts Rules of Criminal Procedure. The failure to raise any such defense or objection by motion prior to trial shall constitute a waiver thereof, but a judge or special magistrate may, for cause shown, grant relief from such waiver. A defense or objection based upon a failure to show jurisdiction in the court or the failure to charge an offense may be raised by motion to dismiss prior to trial, but shall be noticed by the court at any time.

Added by St.1965, c. 617, § 1. Amended by St.1965, c. 756, § 1; St.1978, c. 478, § 298; St.1979, c. 344, § 39.

### Historical and Statutory Notes

St.1965, c. 617, was approved Aug. 9, 1965, and by § 3 made effective Oct. 4, 1965.

St.1965, c. 756, § 1, approved Nov. 16, 1965, and by § 3 made effective as of Oct. 4, 1965, in the fourth paragraph, added the second sentence.

St.1978, c. 478, § 298, approved July 18, 1978, and by § 343 made effective January 1, 1979, in the fourth paragraph, in the second sentence, substituted "a jury session", and "said jury session", respectively, for "the district court".

St.1979, c. 344, § 39, an emergency act, approved June 30, 1979, and by § 51 made effective July 1, 1979, rewrote the section which prior thereto read:

"The pleadings in criminal proceedings shall be the indictment or complaint, and the pleas of not guilty, guilty and nolo contendere. All other pleas, and demurrers, challenges to the array and to the manner of selection of grand or traverse jurors, and motions to quash are hereby abolished, and any defenses and objections, which could have been raised before trial by



EXHIBIT

C

E. J. "JAKE" GARN
UTAH

07 Dirksen Senate Office Building
Telephone: 202-224-5444

JEFF M. BINGHAM
Administrative Assistant

United States Senate
WASHINGTON, D.C. 20510

COMMITTEES:
APPROPRIATIONS
BANKING, HOUSING AND URBAN AFFAIRS
INTELLIGENCE

March 29, 1983

EXHIBIT
E

Mr. William Murry Tyree
Box 100
South Walpole, Massachusetts 02071

Dear Mr. Tyree:

I apologize for the delay in responding to your previous request for a notorized statement from me regarding the events surrounding my inquiries to the Department of the Army.

Since initial contact with my office was in 1978 concerning court-martial proceedings against you by the Army, all of our files were in microfilm form.

Accordingly, I will attempt to respond to your questions for the record.

1. The first time I learned that there were possible threats against you and your wife was in December of 1978 upon receipt of the December 17, 1978 letter from your parents. They expressed concern that you would not turn in evidence against some of your alleged friends who were also implicated in the theft of government property. Specifically they stated, "There is a positive danger here. A danger to my son, daughter-in-law, and three-week old granddaughter... At this point I am not sure that he has not been threatened. He would not admit it if he had been."

2. After receipt of your parents' December 17, 1978 letter, I again wrote to the Department of the Army, Major G. James Lee, Chief of Legislative Liaison, on January 12, 1979 and enclosed a copy of the December 17 letter. I do not have a copy of my letter. I only have a notation that we contacted him on January 12, 1979. My letter would have requested the Army to look into this matter and to report back to me.

Prior to receipt of your parents' letter of December 17, 1978, I received a report from the Department of the Army, Col. Forest S. Rittgers, Jr., dated November 24, 1978. This was in response to my inquiry to the Army dated October 25, 1978, after receipt of your letter to me which I received on October 17, 1978.

7. I have no knowledge that Fort Devens has ever been investigated with respect to drug trafficking.

8. I have not been asked to investigate Fort Devens for other illegal activities. It was your parents and you who mentioned books and diaries your late wife, Elaine, had kept on illegal activities going on at Fort Devens.

   Sometime between January 31 and February 2, 1979 my staff assistant was notified by a man (possibly Col. Moore or Maj. Garrett) from Army Liaison that this case possibly involved arms and drug traficking at Fort Devens. That was the first time my office heard of this issue being introduced. On May 22, 1979 you wrote to me and also mentioned drug involvement.

I hope this information adequately addresses your questions.

Sincerely,

Jake Garn

JG/jde
Enclosure

4/8/83

NOTARY PUBLIC
DISTRICT OF COLUMBIA

MY COMMISSION EXPIRES APRIL 30, 1987



DEPARTMENT OF THE ARMY
HEADQUARTERS FORT DEVENS
FORT DEVENS, MASSACHUSETTS 01433

REPLY TO
ATTENTION OF:

AFZD-CO

7 JUL 1980

SUBJECT: Conviction by Civil Court: PV1 William M. Tyree, 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

22 Jul 80

THRU: Commander
US Army Forces Command
ATTN: AFPR-MP
Fort McPherson, GA 30330

TO: Commander
US Army Military Personnel Center
ATTN: DAPC-EPA-A-S
Alexandria, VA 22331

1. PV1 Tyree was convicted 29 February 1980 of first degree murder by the Massachusetts Superior Court and sentenced to life imprisonment. The crime was the murder-for-hire of his wife, herself a member of the US Army. The details are set forth in the attached record of elimination board proceedings. This exceptionally brutal murder and the ensuing trials of PV1 Tyree and his accomplice were the subject of constant notoriety throughout Fort Devens and the State of Massachusetts of over one year. (Incl 1)

2. Despite the provisions of paragraph 14-15a, AR 635-200, the board of officers convened UP Section III, Chapter 14, AR 635-200, recommended PV1 Tyree be discharged for his murder conviction with a general discharge. I consider this incredible recommendation to be a travesty and an embarrassment to the Army totally unsupported by the record, but under the provisions of paragraph 14-17b(3), AR 635-200, I have no authority to set aside or overrule the recommendation of the board as to character of discharge. HQDA has the authority UP paragraph 1-2a, AR 635-200, to take corrective action in this case to direct the discharge of PV1 Tyree with an appropriate discharge under other than honorable conditions.

3. Under the circumstances, in view of the overwhelming evidence of guilt and the adverse impact the unfavorable publicity in this case has already had upon the 10th Special Forces Group (Abn), Headquarters Fort Devens, and the United States Army, request immediate discharge

Incl 4

DAPC-EPA-A-S (7 Jul 80) 1st Ind
SUBJECT: Conviction by Civil Court: PV1 William M. Tyree, 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

DA, MILPERCEN, 2461 Eisenhower Avenue, Alexandria, VA 22331 24 SEP 1980

TO Commander, Fort Devens, ATTN: AFZD-CO, Fort Devens, MA 01433

1. Your request for discharge of Private Tyree has been carefully reviewed.

2. It has been determined by the Office of The Judge Advocate General that circumstances that compel immediate discharge normally will not arise where the member will remain in civil confinement pending action of the appeal. Further, it would be legally objectionable for HQDA to direct a discharge characterization less favorable than that recommended by an administrative separation board, notwithstanding the provision of paragraph 1-2a, AR 635-200. Therefore, your request to discharge Private Tyree is disapproved.

3. Recommend that Private Tyree be reassigned to the nearest Personnel Confinement Facility in accordance with AR 600-62 pending the outcome of his appeal.

FOR THE COMMANDER:

CHARLES E. MAGAW
Major, GS
Chief, Appeals Branch

1 Incl
nc



Inc 13



U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

WASHINGTON, DC 20310-0101

| | |
|---|---|
| Postage | $ 1.29 |
| Certified Fee | 2.30 |
| Return Receipt Fee (Endorsement Required) | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 5.34 |

MANCHESTER BY THE SEA MA JUN 18 2003 USPS 01944
Postmark Here
Clerk: KF 06/18/03

Recipient's Name (Please Print Clearly) (to be completed by mailer)
JAG, The Pentagon, 101 Army Pentagon
Street, Apt. No.; or PO Box No.
The Pentagon
City, State, ZIP+4
Washington, D.C. 20310-0101

PS Form 3800, February 2000 See Reverse for Instructions

7099 3400 0018 8741 0135

UNITED STATES POSTAL SERVICE

- Intranet Item Inquiry - Domestic

Date/Time Mailed: 06/18/2003 15:28

| | |
|---|---|
| City: WASHINGTON | State: DC |
| City: MANCHESTER | State: MA |

| Special Services | Associated Labels | Amount |
|---|---|---|
| CERTIFIED MAIL | 7099 3400 0018 8741 0135 | $2.30 |
| RETURN RECEIPT | | $1.75 |

| Event | Date | Time | Location |
|---|---|---|---|
| DELIVERED | 06/23/2003 | 06:32 | WASHINGTON DC 20301 |
| | Firm Name: PENT MISC 20310 R11 | | |
| | Recipient : 'L JOHNSON' | | |
| | Request Delivery Record | | |
| | (A PS Form 3849, Delivery Receipt, has not been appended to this record. If the item was recently delivered, the Delivery Receipt may not yet have been scanned.) | | |
| ARRIVAL AT UNIT | 06/23/2003 | 02:48 | WASHINGTON DC 20599 |
| ACCEPT OR PICKUP | 06/18/2003 | 15:28 | MANCHESTER MA 01944 |

Enter Request Type and Item Number:

Quick Search ◉ Extensive Search ○

Explanation of Quick and Extensive Searches

Item Number:

Submit

Inquire on multiple items.

Go to the Product Tracking System Home Page.

June 30, 2003

United States Army
**Attn: The Inspector General**
**SAIG-AC**
1700 Army Pentagon
Washington, D.C. 20310-1700

RE: Request For Assistance And Investigation Into Violations Of The Uniform Code Of Military Justice.

Dear sir,

Please find attached a copy of a letter, with exhibits that has been served on the Staff Judge Advocate, and several members of the United States Congress.

The crux of the complaint is this:

1. U.S. Army, Fort Devens, MA., did on 13 Feb 1979 release me to civilian authorities for arrest in the murder of my wife, who was also a soldier;
2. this release must be UP UCMJ Article 7, Article 9: no release without probable cause is possible;
3. throughout my 1979 Probable Cause Hearing, (12½ days long with 45-50 witness'es), and my 1980 trial, (10 days long with 18-20 witness'es), the U.S. Army (through two very questionable CID agents), were very elusive about the exact time and date of my arrest. This resulted in the events of 13 Feb 1979 being in such a state of question that the Massachusetts Supreme Judicial Court, (SJC), took the only action available to it;
4. the SJC rendered a written published opinion, (relevant page attached), that reflects no probable cause existed for my arrest until 14 Feb 1979.

Now we have a problem as described within the letter to the SJA, and the members of Congress. In an effort to hide their illegal conduct on the evening of 13 Feb 1979, the CID agents did bring the SJC to the realization that the actual probable cause for my

Page three
Letter To SAIG-AC

I respectfully thank you in this matter and look forward to your response.

Sincerely,

William M. Tyree

Willaim M. Tyree
P.O. Box-100
S. Walpole, MA. 02071

cc: Members of Congress previously contacted
Members of the media previously contacted
Attorney Raymond D. Kohlman, (Judicial Ph.d)
file

---

n.1/ The SAIG-AC has a mandate to investigate and correct alleged violations of the UCMJ. This packet is a prima facia showing that no probable cause existed for my arrest on 13 Feb 1979 according to the state court. Since the state court has the jurisdiction over my person (absent the Army reasserting control over me), the Army is bound by the state court decision. That decision is the authority by which the Army discharged me. If the Army found the SJC decision to be sufficeint and valid enough to warrant my discharge, then the Army has already accepted the decision and date of my arrest as 14 Feb 1979. If that is the case, WHY DID THE ARMY RELEASE ME TO CIVILIAN AUTHORITIES ON 13 FEB 1979? I look forward to your response in this matter and recommend that this mess be given to the SJA to sort out.



**DEPARTMENT OF THE ARMY**
**OFFICE OF THE INSPECTOR GENERAL**
**1700 ARMY PENTAGON**
**WASHINGTON DC 20310-1700**

July 25, 2003

Assistance Division

Mr. William Tyree
P.O. Box –100
South Walpole, MA 02071-0100

Dear Mr. Tyree:

We are replying to your June 30, 2003 letter to the Department of the Army, Inspector General concerning your request to have the matters you present submitted to the Army Staff Judge Advocate, for a recommendation that a court of inquiry be convened.

By policy, the inspector general system does not normally address matters where a more appropriate avenue of redress is available to resolve a dispute. The appropriate avenue of redress for the matters you presented is The Judge Advocate General. Since you have already submitted a request directly to that agency, further action by the inspector general is not warranted.

If you wish to contact the Department of the Army, Inspector General regarding this case in the future, please reference the case number, DIH 03-0611. We trust this reply has been informative.

Sincerely,

James E. Clark, Jr.

James E. Clark, Jr.
Lieutenant Colonel, U.S. Army
Inspector General

Printed on Recycled Paper