January 18, 2004

Department Of The Army
Attn: Secretary Of The Army
104 Army Pentagon
Washington, D.C.  20310-0104

RE: Refusal Of the Inspector
    General To Investigate The
    Staff Judge Advocate For A
    Cover-Up & Violation Of The
    UCMJ In A Civilian Homicide.

Dear Mr. Secretary,

   Please review the following exhibits which will outline the cover up and violation of the Uniform Code Of Military Justice, (UCMJ):

   1. Letter to JAG dated June 9, 2003;
   2. Proof of service on the JAG on June 18, 2003: JAG received the letter of June 9, 2003, on June 23, 2003;
   3. Letter to the I.G., dated June 30, 2003, requesting the I.G. to investigate the JAG, and the contents of the June 9, 2003, letter to the JAG;
   4. Letter from the I.G. dated July 25, 2003, which outlines that the I.G. will not intervene in the matter because the I.G. is under the mistaken belief that the JAG will do it's job: the JAG is deliberately avoiding this case because of the events described within the letter of June 9, 2003.

At this point I request the following from the Office Of The Secretary Of The Army:

   5. Please convene a Court Of Inquiry to investigate this matter;
   6. Please provide me with the address of the Army JAG Office to whom I would submit a "CLAIM FOR DAMAGE, INJURY, OR DEATH," Standard Form 95 (Rev. 7-85). If the Army cannot, or will not



EXHIBIT 6

I, William M. Tyree, on oath state that the copies attached as pages to this exhibit are true genuine copies of the documents they purport to represent. Signed under the pains and penalties of perjury on this date, 7-3-04.

William M. Tyree, P.O. Box 100,
S. Walpole, Massachusetts, 02071

# Chronology of a police nightmare

By PATRICIA MONTMINY
Sun Staff

AYER — The bizarre story which has ripped apart a police department began Feb. 25, 1980 when employees opened the doors of the Ties Construction Co. to find that the business had been pillaged by intruders.

Equipment, furniture, and windows had been smashed. Fires had been started and a fork lift was driven into the walls. The damage estimate was $25,000.

For a year the incident lay dormant, but festered. Then the situation exploded with a series of events that tore the police department wide open and sent shock waves into the community which are still being felt.

The following chronology begins after late February, 1980 when Officer Stanley Randall was sent to investigate the break and vandalism.

— February 29, 1980 — Officials at Ties Construction rehire a private paid police detail. The detail had been discontinued six weeks earlier, because of a business slump. Policemen had described the Ties detail as the one of "most lucrative ever."

— June 8, 1980 — The Ties detail ends when the business closes its operations in Ayer.

— Months later — Officer Edward Gintner, according to Officer Randall, weaves a strange story about the role Gintner played in driving three other policemen to the Ties site.

— April 28, 1981 — Officer Gintner talks to Officer Leon Smith about his involvement in Ties. The story spreads through the department.

— May 20, 1981 — Officer Randall confronts Officer Ginter, and they talk about the Ties incident. Randall later says publicly that the damage was done to retaliate against the company for the discontinuance of the police detail.

— Mid-summer, 1981 — Someone calls the state's attorney general's office.

— July 18, 1981 — Ayer Officer William Adamson Jr., one of the officers implicated in the incident and son of Police Chief William Adamson Sr., resigns from the department to accept a position with the Boston and Maine Railroad Police.

— July 28, 1981 — Investigators from the AG's office arrive in Ayer and launch their probe, talking to Officers Randall and Smith.

— July 31, 1981 — AG investigators interrogate Gintner.

— Aug. 3, 1981 — An entry in the Ayer police log made by Chief Adamson indicates that he is aware of the investigation and has spoken to Gintner, Adamson Jr., Sgt. James Lenney and Officer Domenic Pugh. All the officers deny to Adamson any knowledge or involvement in the Ties break.

— Aug. 26, 1981 — Reports of the alleged involvement of four police officers in the Tie burglary breaks in the media.

— Aug. 27, 1981 — Officers Randall and Smith pass lie detector tests for the AG.

— Oct. 1, 1981 — Randall testifies at the trial of former Police Officer Ernest Downing, fired from the force after being charged with moral offenses. Downing is acquitted.

— Oct. 8, 1981 — Randall is charged with seven departmental rules violations, including violations stemming from his testimony at the Downing trial.

— Oct. 13, 1981 — Randall faces a hearing before the board of selectmen and to a continuous roar of 500 onlookers, selectmen drops all charges.

In a hearing held earlier that evening, behind closed doors, Officer Pugh is given a three-day suspension for statements about the department which he made at the Downing trial.

— Oct. 19, 1981 — Breaking a long silence, Lenney, Gintner and Pugh hold a press conference and emphatically deny the Ties allegations. Gintner explains that his statements were made "jokingly."

— Oct. 23, 1981 — Chief Adamson goes to the

## Ayer officer to appeal grievance to state

AYER — Police officer Stanley Randall will appeal to a state board of arbitration the selectmen's recent decision to turn down a grievance he filed against the board.

Randall filed the grievance in connection with the board's Feb. 8 appointment of Dennis MacDonald to a vacant sergeant's position.

Randall was also a contender for the position and the officer recommended by Police Chief Phillip Connors for the position.

At last night's selectmen's meeting, selectmen Chairman Murray Clark quoted from Randall's letter, which said the board's decision on his grievance was "not acceptable to me." According to Clark, the letter said selectmen will be contacted by an arbitrator.

---

****See SJC decision at Local 346 v. Labor Relations Com'n, 391 Mass. 429 (1984).

The SJC found that the police were involved in criminal conduct in early 1979. That was the time period that they searched the Tyree apartment and testified against William Tyree at his 1980 trial.

---

5-15-84

## Court backs Ties-related police firings

BOSTON — The town of Ayer had the right to order police officers to take lie detector tests and to fire those that didn't, the state Supreme Court has ruled.

The decision announced Wednesday stemmed from a 1981-82 Ayer scandal, in which four officers, a quarter of the 15-member force, were suspected of vandalism at the Ties Construction Co., a company that stopped hiring them for off-duty details.

Edward Gintner, Sgt. James Lenney and Dominenic Pugh, the three officers suspected of being involved, were fired when they failed to take the lie detector test ordered by a new police chief as part of an internal investigation.

William Adamson Jr., the fourth officer quit the force.

The International Brotherhood of Police Officers, Local 346, filed a complaint with the state Labor Relations Commission, charging the requirement was a prohibited practice under the work contract.

The state commission dismissed the complaint.

"We conclude that the commission did not err in determining that the town's decision to order polygraph testing was within the town's exclusive managerial prerogative," the court said.

A footnote to the 20-page unanimous decision written by Justice Ruth I. Abrams summed up the public's view of the situation.

"There was evidence that laws people would call the police department only when specific police officers were on duty, and that, although it was common practice for Ayer residents to notify the police when leaving a house unattended, they were reluctant to do so after this investigation became public."

After eight months of special police details, at time-and-a-half, the manufacturing company stopped the hiring practice. In February, 1980, it was broken into and vandalized to the extent of $25,000 to $45,000, the court reported.

The court said the alleged police crime came to light in 1981 in conversation between two officers, one of whom said the vandalism was in retaliation for the company's termination of their employment as private guards.

---

## Health board deep hole testing

PEPPERELL — The board of health has announced that it will begin witnessing of deep hole testing on March 24.

Any person who wishes to make an appointment or inquire about the testing requirements should call or visit the health board office at the town hall during regular office hours Monday through Friday from 8:30 a.m. to 1 p.m.

The board of health office will be closed for vacation Monday, March 19, through Wednesday, March 21, but the board will hold its regular weekly business meeting on Tuesday, March 20, at 7 p.m.

## DOCUMENTATION ASSERTING ACTUAL INNOCENCE CLAIM:

LOWELL SUN NEWSPAPER, LOWELL, MA. (May 1979)

**Aarhus, Peters face charges**

# Tyree indicted in wife's murder despite judge's contrary ruling

By NICK CARAGANIS
Sun Staff

AYER — Judge James W. Killam III yesterday found no probable cause for murder charges against Pvt. William Tyree Jr. in connection with the Jan. 30 murder of his wife, but concluded there was evidence to warrant a probable cause finding against Pvt. Erik Y. Aarhus and stunned the proceedings by ordering murder charges filed against a third individual who had testified at the hearing.

A Middlesex County Grand Jury, three hours later, however, apparently thought otherwise as it indicted Tyree on first degree murder charges.

Killam's decision on Tyree, husband of murder victim PFC Elaine Tyree, stunned Asst. District Attorney Dante DeMichaelis who said after conferring with his Cambridge office that he would move immediately for a grand jury indictment against Tyree on murder charges.

The district attorney had the option of pursuing the case and seeking a direct indictment despite any decision at a probable cause hearing.

IN A SURPRISE move, the judge ordered murder charges be filed against Spec 4 Earl Michael Peters in connection with the Tyree murder.

Although Judge Killam's decision favored Tyree on the murder charge, the judge did find probable cause against him on lesser charges of accessory after the fact of murder, conspiracy with Peters to obstruct justice and obstruction of justice.

Tyree was arraigned on the



**WILLIAM TYREE**
... Indicted

accessory after the fact of murder charge and ordered held at the Billerica House of Correction on $25,000 bail.

The judge ordered Ayer Police Chief William Adamson Sr. to execute complaints against Peters charging him with murder in the first degree, conspiracy with Erik Aarhus to murder Elaine Tyree, being an accessory before and after the fact of murder, conspiracy with William Tyree to obstruct justice and obstruction of justice.

Peters, a close friend of Tyree, testified during the hearing that Tyree spent more than three months looking for someone to kill his wife.

Peters, who through testimony was implicated with Tyree in numerous alleged crimes at Fort Devens, had also testified that Tyree asked him if he knew "a hired assassin to kill his wife."

The judge did find probable cause for guilt against Aarhus for murder in the first degree, accessory before the fact of murder and conspiracy with Peters to murder Elaine Tyree.

BUT, IN MAKING his decision against Aarhus, Judge Killam commented "I do not believe Aarhus wielded the murder weapon."
— Atty. Bernard Bradley, counsel for Tyree said he was surprised by the decision but added "it takes courage for a judge to find no probable cause."
—Tyree and Aarhus were arrested on Feb. 13 in connection with the Jan. 30 murder of Mrs. Tyree. Her body was found in the living room of her apartment at 104½ Washington St. She had been stabbed 17 times and her throat had been cut.
—Tyree was accused of hiring Aarhus to kill his wife for $5,000. — Peters led police to the alleged murder weapon in Aarhus' room at the Devens barracks.
—Subsequent to the arrest, Aarhus made an unsigned confession to police admitting the crime and implicating Tyree.
—In his written decision, Judge Killam said "the emergence of the alleged murder weapon with the blood of the victim still on it, preserved in two plastic bags, and found under the barracks cot pillow of the defendant Aarhus, charged with the deed, which barracks are vulnerable to daily inspections, would strain the credibility of even the most gullible. The enlightened suspicion of 'frame' is inescapable."

Judge Killam said Pvt. Tyree had two friends, one of whom was Peters, "a regular visitor at the Tyree apartment who had the confidence of William Tyree and his intimate knowledge of the Tyree homes and habits together with his probable involvement with Tyree in various illegal activities suggests his involvement in the homicide."

ADDED JUDGE Killam "this same intimacy tends to explain Tyree's apparently accurate grasp of the events surrounding his wife's death. Peters' obvious guile and Tyree's apparent intellectual deficiency lead more believably toward Peters' leading and Tyree's following in various disclosures and discoveries subsequent to the homicide."

First Assistant Clerk of Court Joseph DeFreitas, who attended all of the sessions, said Killam's decision ended one of the longest probable cause hearings in the history of the Commonwealth which saw more than 40 witnesses testify and numerous exhibits introduced.

the witness stand.

In view of the foregoing, together with and after complete hearing of all the evidence, all parties being represented by counsel and with full opportunity to be heard and to examine witnesses, I make the following determinations and orders:

I. Pvt. William Tyree. Probable cause found and complaints of process to issue if not already issued.
   1. Accessory after the fact of murder
   2. Conspiracy with Earl Michael Peters to obstruct Justice
   3. Obstruction of Justice

II. Pvt. Erik V. Aarhus. Probable cause found and complaint and process to issue if not already issued.
   1. Accessory before the fact of Murder
   2. Murder in the first degree
   3. Conspiracy with Earl Michael Peters to murder Elaine Tyree

III. Spec. 4, Earl Michael Peters. I hereby order Chief William Adamson, Sr. or his designee to execute the following complaints against Earl Michael Peters, without further obligation as a result of this order and I hereby order Warren Birch, Esq., Clerk, or his designee to issue process as a result thereof against the said Earl Michael Peters.
   1. Accessory before the fact of murder
   2. Accessory after the fact of murder
   3. Conspiracy with Erik V. Aarhus to murder
   4. Murder of Elaine Tyree in the first degree
   5. Conspiracy with William Tyree to obstruct justice
   6. Obstruction of justice

IV. No probable cause found on complaints not enumerated.

I further hereby decline jurisdiction of any charges otherwise appropriate to the District Court Department and further hereby notify any and all defendants of their right to waive indictment and to proceed to trial upon the foregoing complaints.

May 15, 1979

James W. Killam, III
Special Justice

JWK/mcw

2

involved have been briefed and argued with skill on both sides.

The motion to dismiss the complaint herein must be denied. As the criminal complaints were not signed and sworn to by a complainant before a neutral magistrate, they were issued unlawfully. See G. L. c. 276, § 22; G. L. c. 218, § 33. Cf. Commonwealth v. Haddad, 364 Mass. 795 (1974). It has been urged upon us that the judge had "inherent" authority to issue the criminal complaints, but no case cited to us has gone so far (see LaChapelle v. United Shoe Machinery Corp., 318 Mass. 166, 170 [1945]; Hurley v. Commonwealth, 188 Mass. 443 [1905]), and any such argument must be received with caution in the face of the statutes above cited.* (The question whether or how the judge might have proceeded lawfully to procure the issuance of such complaints is not before us.)

We think the instant action may be maintained in its present form. There is no force in the contention that Peters is an indispensable party not joined (see Mass. R. Civ. P. 19; 365 Mass. 765-766 [1974]). The District Attorney's standing to maintain the action is supported by the alleged facts that Peters is regarded as a major witness in the prosecution of Tyree and

---

\* Nor does Mass. R. Crim. P. 4, becoming effective on July 2, 1979, purport to grant the authority claimed here.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.　　　　　　　　　　　　SUPREME JUDICIAL COURT
　　　　　　　　　　　　　　　　　　　FOR SUFFOLK COUNTY
　　　　　　　　　　　　　　　　　　　No. 79-279　Civil


JOHN J. DRONEY AS HE IS
DISTRICT ATTORNEY FOR THE NORTHERN DISTRICT
AND WILLIAM L. ADAMSON, JR.

v.

FIRST NORTHERN MIDDLESEX DIVISION OF THE
DISTRICT COURT DEPARTMENT OF THE MASSACHUSETTS
TRIAL COURT AND THE CLERK OF THE SAID
FIRST NORTHERN MIDDLESEX DIVISION


ORDER


The defendants having moved herein to dismiss the complaint, and counsel having been heard; upon consideration, it is

ORDERED that the motion be, and the same hereby is denied.

By the Court (Kaplan, J.)

*[signature: Jean M. Bennett]*

Entered: July 6, 1979   Assistant Clerk

A true copy.
　Attest:
July 6, 1979　　　　　　*[signature: Jean M. Bennett]*
　　　　　　　　　　　　Assistant Clerk

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.
                SUPREME JUDICIAL COURT
                FOR SUFFOLK COUNTY
                NO. 79-279

JOHN DRONEY, ET AL.,
    Plaintiffs

vs.

FIRST NORTHERN MIDDLESEX
DIVISION OF THE DISTRICT
COURT DEPARTMENT, ET AL.,
    Defendants

## AGREED JUDGMENT

Now come the parties in the above case and pursuant to Mass. R. Civ. P. 58 agree to the following judgment.

1. Judgment shall be entered in accordance with the memorandum of Kaplan, J. filed on July 6, 1979.

2. The execution of process marked as Exhibit H to the plaintiffs' complaint shall be immediately and permanently suspended and said process shall be quashed.

3. The so-called complaints marked as Exhibit G to the plaintiffs' complaint, **including the six complaints charging Earl Michael Peters with various crimes, were issued contrary to Massachusetts law, are null and void, and are stricken from the docket of the First Northern Middlesex Division of the District Court Department.**

# Commonwealth of Massachusetts

MIDDLESEX, TO WIT:

At the SUPERIOR COURT, begun and holden at the CITY OF CAMBRIDGE, within and for the County of Middlesex, on the first Monday of May in the year of our Lord one thousand nine hundred and seventy-nine

THE JURORS for the COMMONWEALTH OF MASSACHUSETTS on their oath present, That William Tyree, the younger of the name

on the or about thirtieth day of January in the year of our Lord one thousand nine hundred and seventy-nine at Ayer, in the County of Middlesex aforesaid, did assault and beat one Elaine Tyree with intent to kill and murder her, and by such assault and beating did kill and murder said Elaine Tyree

Against the peace of said Commonwealth, and contrary to the form of the statute in such case made and provided.

A true bill.

*[signed] John J. Droney*
District Attorney

*[signed] William C. ____*
Foreman of the Grand Jury.

D.A.-001

# Commonwealth of Massachusetts

MIDDLESEX, SS.

To the Sheriffs of our several Counties, their Deputies, and to the Superintendent of the Massachusetts Correctional Institution, Walpole – ~~Concord~~ – ~~Framingham~~ ~~and Bridgewater~~.

GREETING:

WHEREAS, by the consideration of our Superior Court, holden at Cambridge – within and for the County of Middlesex, on the first Monday of _February_ – in the year of our Lord one thousand nine hundred and _eighty_, _William Tyree Jr._, now in custody of the Sheriff of our said County of Middlesex, ~~now before the Court by virtue of Writ of Habeas Corpus~~, convict of the crime of _Murder first degree_ was on the ~~twenty ninth~~ _first_ day of _February_ in the year of our Lord one thousand nine hundred and _eighty_, sentenced to confinement in the Massachusetts Correctional Institution, – Walpole – ~~Concord – Framing-ham – Bridgewater~~, for a term ~~not exceeding~~ of _Life_ ~~years or less than~~ _____ years, and to stand committed accordingly to said sentence, ~~this sentence is to be served concurrently with the sentence imposed this day in No. ___, this sentence is to be served concurrently with the sentence now being served in said institution, this sentence is to take effect from and after the expiration of the sentence now being served in said institution.~~

This sentence is deemed by the Court to have commenced on _____
The defendant having spent _____ days in confinement prior to such sentence awaiting and during trial.

WE THEREFORE COMMAND YOU, the said Sheriff and Deputies to remove the said _Tyree_ from our Jail in Cambridge, in said County of Middlesex, to our said Massachusetts Correctional Institution in – Walpole – ~~Concord – Framingham – Bridgewater~~, and you the said Superintendent to receive the said _Tyree_ and immediately thereon cause him – ~~her~~ – to be confined therein for a term of ~~not exceeding~~ _Life_ ~~years or less than~~ _____ years as aforesaid.

And for so doing, this shall be your warrant. And you are to make return of this warrant with your doings therein to the office of the Clerk of our Superior Court in Cambridge, as soon as may be.

Witness, James P. Lynch, Jr., Esquire, at Cambridge, this _twenty ninth_ day of _February_ and _eighty_, in the year of our Lord one thousand nine hundred

_James J. Tighe Jr._
Assistant Clerk.

RA-8

Form No. Sup. 240

**Envelope 1:**

U.S. POSTAGE $0.037
BOSTON MA JAN 15 '04
LEGAL

WILLIAL M TYREE
P.O. BOX 100
SOUTH WALPOLE, MA 02071

MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
90 DEVONSHIRE STREET - 8TH FLOOR
BOSTON, MASSACHUSETTS 02109

Received by me on Jan. 28, 2004
Bill Tyree

**Envelope 2:**

U.S. POSTAGE $0.037
BOSTON MA JAN 15 '04
LEGAL

Mr. William Tyree, W37519
MCI Cedar Junction
PO Box 100
South Walpole, Ma. 02071

MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
90 DEVONSHIRE STREET - 8TH FLOOR
BOSTON, MASSACHUSETTS 02109

3/4/80

Mr. Droney,

Took a while to get started. Not much doing around here same routine guess you do about the same thing each day, not much else to do these days dont make much difference where you are. Edie recieved your letter and she also wrote a letter in return. It has about the same thing in it. I have been trying to tell you for some time. Earl Peters knows the story, he mentioned to me he killed Elaine and cut her throat! Not too much question about how she died. I ask about a lot of things. we would like to see judge young to talk to him on the matter. As Elaines father, not to mention because of my fathers death + circumstances as well. I feel it as the right thing to do. I know some would change their minds about if Bill did it. I feel in due time he will

pretty busy so will close now take care.

Jack

Hello Bill;

I haven't forgotten to write I have been busier than a cat on a hot tin roof. Between my railroad work and other matters around the house boy! I have only been home eight hours on each end of my run then work 12 to 14 hrs. got old so I took off since last Tuesday. Have been running around here trying to get caught up on some house hold items and bills and so forth. That has taken eight hours or more each day but today is my day of rest from other matters. it is Sunday & Easter to boot. Tomorrow I have an appointment with the Dr. I've been run down ever since Jan. 30. been getting weak, no more strength than a sick cat. Dale and I went to get fire wood and I couldn't even lift a log not like I use to. Boy! have I gone down hill. I'll have to start using Dales Bar Belle again. Wish you were here I would put you to work. HA.HA. Dawn has been keeping every one happy especially at nite, she still wakes at nite and wants attention which you better believe she gets from Boss Edith. She is still growing 17½ inches and about as many pounds. She likes her baby food and likes to take a bath (Like Elaine) When its bed time she also wants to go to bed in her Crib Better believe no where else either.

I don't know what all you had but from what day & Dawn talked you had a new sweeper, tape recorder, dishes, plates & eating tools and so forth none of that stuff arrived here, I wonder what has happened to all that wonder if you could find out or do you know. It did belong to you all, it was not shipped or something else happened to it, if you want I could maybe possibly find out, put a tracer on it. Well here goes Bill; last but not least, Bill as for Dawn maybe you might have misinterped what Edie and I would like for Dawn. I believe she wrote to you trying to explain what we were trying to do. Do you know the law is a funny thing. I know my cousin who use to live next door wanted to take her brothers child to raise, but they wouldn't let her have her, they put her up for adoption, her brother was killed in an auto accident in Texas, the mother was somewhere else. What we wanted was the legal right to her to raise her until ? what ever or what the out come of all this is. I hope you would give us more credit than to try to take her from you. If you do I don't know what to think. She would be yours any time you wanted her. the papers were just so some outsider would not be able to step in and take her, you know a lot of people are around like that. The last thing in the world would be to try to deprive you or any parent from the right to their child, I hope you will think about this, talk about it with some one legal + so forth. I know I can't be a Dad to her for to long, but maybe could be a good Grand papa. or PAPPY. of some sort, till better day.

so if you understand what I am talking about which I have no doubt, it would be better for all concerned mostly Dawn if she were put in one spot and kept there for her benifit. I do not want you to mis intepret what I am saying either for we love her very much and like I have written before will provide for her the best money can buy in all things. Like Edie wrote you we do not and would not attempt to take her from you in any way what so ever. As God is my maker and witness witness this is the truth. Bill I see your side of a lot of things most especially Dawn believe me for I don't see how any one I could turn her out and not give her every bit of loving care possible. What I have said before have your lawyer to intepet that court order for you, and if he would have any suggestions to make regarding it. You know Bill there are a lot of ifs in the world but if we could for see what the out come of things we could take the ifs out of a lot of things, but I suppose that is the reason that word was made, maybe to take up the slack in a lot of things. I have a feeling we will be coming up that way but I dont know for sure or when another if her Elaine wedding dress never showed up in any of the Ropes. Bill some one else has that picture we have looked through all the pictures and it is missing also. Like a lot of things. Yes I know you two were just getting started and could have had a very fruitful and beautiful life together from the way she talked. I only wish I would have married early in life. I was 31 years old about 1/2 shot or gone when I could have married when I was twenty and in the prime of life. But another if Bill if I can do any thing for you I can do nothing but try what ever.

over



MAIL EARLY
ALWAYS USE
ZIP CODE

CUMBERLAND, MD
APR 16
PM
1979

Mr. Wm. M. Tyree
I-16
Box 565
Billerica, Mo. 01821

FLOYD HEBB
12010 IRIS AVE. S.W.
CUMBERLAND, MD. 21502

**THE SUN** Lowell, Mass.

*The Suburbanite* ★★★

Monday, July 6, 1987

# Complaints sought in '79 murder case

By PATRICIA MONTMINY
Sun Staff

AYER — District Court Judge Stanley Jablonski took under advisement a petition filed by the mother of convicted murderer William Tyree Jr. to issue homicide complaints against a former suspect in the 1979 slaying of her daughter-in-law, and against former Ayer Police Chief William Adamson Sr. for perjury and obstruction of justice in connection with the case.

Judge Jablonski made no decision following a closed-door hearing that lasted more than an hour, and in which no witnesses were called.

Adamson appeared at the hearing represented by Town Counsel Robert Gardner and his personal attorney, William McKenney.

The former suspect, Earl M. Peters, who now lives in Pennslyvania, was not at the hearing.

Tyree is serving a life sentenced at Cedar Junction state prison in Walpole in connection with the murder of his wife, Elaine Tyree, in the couple's apartment at 104½ Washington St., Ayer. Tyree was a Green Beret and his wife a private.

Tyree contends that his wife was an informant for the Army's criminal investigation division, and the notebooks and diaries she kept on other soldiers were responsible for her murder.

At a pretrial hearing 10 days ago, Tyree's mother, Gaye Tyree, was denied motions for the issuance of subpoenas for her son, Eric Aarhus, another soldier convicted in connection with the murder and serving a life sentence at Norfolk state prison, and Judge James Killam, who handled the probable cause hearing.

Prior to the hearing, Mrs. Tyree moved to have Assistant District Attorney David Meier and Gardner removed from the proceeding. Both motions were denied.

Mrs. Tyree contended that Gardner's presence constituted a conflict of interest, since Gardner had notorized an affidavit made by his uncle, Ayer businessman Francis Gardner. Francis Gardner, in that affidavit, claimed that he saw Peters in front of the Tyree home moments after the murder. Francis Gardner was William Tyree's landlord.

Judge Jablonski questioned both lawyers, who stated they felt their presence did not amount to a conflict.

## Town's agreement

Gardner also said that he was at the hearing representing Adamson in accordance with an agreement the town made with Adamson. He said that Adamson's agreement entitled him to legal representation in connection with any issues arising out of his tenure as police chief.

Tyree's lawyer, Concord Attorney Damon Scarano, filed an objection with Judge Jablonski's decision prohibiting Tyree's appearance. Scarano also addressed some of the current petitions before the court in connection with the Tyree case.

Judge Jablonski did allow a request made by Wanda Brackett that she be allowed to remain in the courtroom for the proceeding. Brackett said that she was the fiancee of Aarhus, and held his power of attorney.

Also present were Bryzinski, State Police Troopers William Lisano and and Rodney Hendrigan.